Dr. Howard L. BURLEY

v.

UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, J. Bernard Redd, Larry W. Lockhart, T. L. Stafford, III, R. L. Vallarian, A. E. Taylor, M. A. Henstreet, J. E. Fusco and B. B. Anderson.

No. 77–3522–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

Dec. 9, 1977.

Avon N. Williams, Jr., Maurice E. Franklin, Richard H. Dinkins, Nashville, Tenn., for plaintiff.

Hal D. Hardin, U. S. Atty., Wm. Gary Blackburn, Asst. U. S. Atty., Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, Chief Judge.

Plaintiff, a licensed pharmacist, sues defendants, employees and agents of the Drug Enforcement Administration ("DEA") and the Administration itself, to enjoin defendants from appearing, testifying, and/or furnishing documents regarding the plaintiff at a hearing to be held before the Tennessee Board of Pharmacy on December 8, 1977. Plaintiff seeks a temporary restraining order, preliminary injunction, permanent injunction, damages, costs, and attorneys' fees. Jurisdiction is asserted pursuant to 5 U.S.C. §§ 552 and 552a, 21 U.S.C. § 882, and 28 U.S.C. § 1331. Defendants deny that plaintiff is entitled to any relief, and have moved the court to dismiss this action.

An evidentiary hearing on plaintiff's motion for a temporary restraining order was held on December 5, 1977. Based on the evidence adduced therein, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff is a practicing pharmacist in the State of Tennessee. He owns and operates Consumer's Drug Store, which is located in Nashville, Tennessee. He was licensed to practice as a pharmacist by the Tennessee Board of Pharmacy.

On July 8, 1975, several DEA agents, including Agent Larry Lockhart, began an inspection of records at plaintiff's place of business pursuant to a warrant of inspection obtained by the agents. Certain of these records, including prescriptions, wholesale drug invoices, and DEA wholesale drug order forms, were removed from plaintiff's store by the agents. These rec-

ords were subsequently returned to plaintiff by the agents. However, these records were later subpoenaed by the Grand Jury for the Middle District of Tennessee. Plaintiff turned these records over to DEA agents, who were acting as agents for the grand jury at that time, on August 12, 1976.

On November 9, 1976, Dr. Landon B. Snapp was indicted for conspiracy and illegal distribution of drugs. Plaintiff was named as a co-conspirator in the conspiracy count of the indictment, but was not charged with conspiracy himself. He was subsequently subpoenaed to testify as a government witness at the trial of Dr. Snapp. Prior to testifying, plaintiff appeared for a pretrial conference in the offices of the United States Attorney. He was accompanied at this conference by his attorneys, Avon N. Williams, Jr., Esq. and Maurice E. Franklin, Esq., and his sister-in-law, Evelyn Suggs. An agreement was reached at the conference between plaintiff, his attorneys, and Irvin H. Kilcrease, Jr., Esq., who was one of the Assistant United States Attorneys trying the Snapp case, regarding immunity for plaintiff after he invoked his Fifth Amendment privileges. This agreement was memorialized in a letter from Mr. Kilcrease to Mr. Williams which provided as follows:

January 5, 1977

Hon. Avon N. Williams, Jr.
Attorney at Law
1414 Parkway Towers
Nashville, Tennessee 37219

Re: *United States v. Landon B. Snapp*
76–226–NA–CR

Dear Mr. Williams:

This is in reference to the testimony of Dr. Howard Lawrence Burley, Sr., proprietor of Consumer's Drug Company, 700 Main St., Nashville, Tennessee. This letter is being dictated in the presence of Attorney Avon N. Williams, Jr., Attorney Morris E. Franklin, Dr. Howard L. Burley, and Ms. Evelyn Suggs, sister-in-law to Dr. Burley.

The subject of this letter pertains to the agreement of the United States Attorney's Office for the Middle District of Tennessee with Dr. Burley to the effect that any testimony given by Dr. Burley at the trial of Dr. Snapp in the United States District Court for the Middle District of Tennessee at Nashville will not be used against Dr. Burley for the purpose of criminal prosecution in the future.

It was further agreed by the United States Attorney's Office with Dr. Burley that Dr. Burley will not be prosecuted for any of the transactions involved in the investigation and trial of the above-captioned case, or related thereto.

Very truly yours,
CHARLES H. ANDERSON
United States Attorney
/s/ Irvin H. Kilcrease, Jr.
BY: IRVIN H. KILCREASE, JR.
Assistant United States Attorney

The agreement memorialized in the letter was the sole agreement regarding immunity reached by the parties. Plaintiff then testified at Dr. Snapp's trial. His testimony included testimony about certain of his business records that had previously been subpoenaed by the grand jury.

In March 1977, DEA agents again inspected records of plaintiff's business operations pursuant to another warrant of inspection they had obtained. Certain of these records were again taken by the agents. On November 22, 1977, DEA agents returned some of the records that had previously been turned over to them by plaintiff to him. The only records that have not been returned to plaintiff are those which were made exhibits during the trial of Dr. Snapp.

On April 20, 1977, J. Bernard Redd, Special Agent-in-Charge of the Nashville office of DEA, mailed copies of DEA's investigative reports concerning plaintiff and his place of business to William B. Swafford, the Director of the Tennessee Board of Pharmacy. The transmittal letter provided as follows:

Dear Mr. Swafford:

Enclosed you will find copies of investigative reports concerning our investigation of Howard L. BURLEY and CONSUMERS DRUG STORE. This investigation

resulted in the conviction of Landon B. SNAPP, M.D., in the Middle District of Tennessee, for illegal distribution and conspiracy to illegally distribute controlled substances

These reports are furnished to you for whatever action is deemed appropriate concerning Howard BURLEY and CONSUMERS DRUG STORE. If you need any additional information in the matter, feel free to contact the DEA Nashville District Office.

Upon completion of any action by the board, please return the reports to DEA.

> Sincerely,
>
> James R. Bland
> Regional Director
> /s/ J. Bernard Redd
> By: J. Bernard Redd
> Special Agent-in-Charge

The investigative reports were based solely on DEA's investigation of plaintiff, and were not based in any part on the testimony of plaintiff given during the trial of Dr. Snapp. The forwarding of such investigative reports was a standard procedure of DEA.

Plaintiff was subsequently charged with violating T.C.A. § 63–1020(d) by the Tennessee Board of Pharmacy. Section 1020(d) provides that the Board of Pharmacy, after proper notice and hearing, shall:

> have authority to revoke or suspend any license, permit, or certificate of registration issued under this chapter and place the holder of such on probation and, in addition, the board shall have authority to assess a civil penalty, not in excess of five hundred dollars ($500), whenever the board shall find that the holder of such has engaged in conduct prohibited or made unlawful by any of the provisions of this chapter, or any other laws of the state or of the United States relating to drugs or to the practice of pharmacy.

A hearing by the Board on the charges it filed against plaintiff is scheduled for December 8, 1977.

## CONCLUSIONS OF LAW

■ Plaintiff first contends that the grant of immunity he received on January 5, 1977 bars the use of the investigative report against him at the Board of Pharmacy hearing because he testified as to matters contained within that report. It is now well settled that testimony given after immunity has been granted or information directly or indirectly derived therefrom may not be used against the witness in any criminal proceeding. *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). *See also* 18 U.S.C. § 6002. However, if the subsequent proceedings in question are civil in nature, no such prohibition applies. *See In Re Daley,* 549 F.2d 469 (7th Cir.), *cert. denied,* —— U.S. ——, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977); *Childs v. McCord,* 420 F.Supp. 428 (D.Md.1976), *aff'd,* 556 F.2d 1178 (4th Cir. 1977). Thus the court must determine whether the proceedings before the Tennessee Board of Pharmacy are penal in nature, for if they are, plaintiff's immunized testimony may not be used against him by the Board.[1]

■■ It is the opinion of the court that the proceedings before the Board are not criminal in nature, and thus the investigative report may be used by the Board in determining whether it should take any action against plaintiff. Although the Board must determine whether plaintiff engaged in any conduct prohibited by the laws of the United States or the State of Tennessee, the "punishment" it may impose is not penal in nature but rather in the nature of a civil penalty. The Board may not order plaintiff's incarceration. The Board may

---

1. For the purposes of this opinion, the court will assume that plaintiff is correct in his contention that by testifying about matters contained within the investigative report, plaintiff "immunized" those portions of the report. The fact that plaintiff also received transactional immunity for his testimony does not alter the court's determination of the merits of this motion.

only impose a small fine on plaintiff, suspend or revoke his license, or place him on probation. The Board's actions are essentially remedial in nature and are directed at assuring the fitness of pharmacists to practice in the State of Tennessee rather than punishing them for engaging in illegal conduct. Moreover, the court finds that the proceedings in question are not intended to abrogate plaintiff's privilege against self-incrimination through the vehicle of a nominally civil proceeding which in reality is punishment for engaging in criminal activity. *See, e. g., United States v. United States Coin and Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). The Board of Pharmacy was created to license and regulate pharmacists in the State of Tennessee. Although the Board may base its decision on a prior judicial determination of guilt, it may initiate its own investigations and conduct its own proceedings separate and apart from any criminal proceedings in either state or federal court. Thus, the court concludes that the proceedings in question are not a sham to punish someone for engaging in criminal conduct but are an established regulatory function of the state. Therefore, the investigative report prepared by DEA may be used by the Board of Pharmacy in its consideration of plaintiff's case, the proceedings in question being civil and remedial in nature rather than criminal. *In Re Daley, supra; Childs v. McCord, supra.*

■ Plaintiff's second contention is that transferral of the investigative report to the Board of Pharmacy was prohibited by the Privacy Act of 1974, 5 U.S.C. § 552a. The Privacy Act prevents disclosure of information obtained by government agencies except in certain limited instances. One of the instances in which disclosure may be made is if the disclosure is for a "routine" use. 5 U.S.C. § 552a(b)(3). Routine use is defined in the Act as being the use of a record "for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7). The Department of Justice, as required by 5 U.S.C. § 552a(e)(4)(D), has promulgated regulations concerning what is a routine use of

DEA records and reports. Routine use of investigative reports has been defined in pertinent part as follows:

JUSTICE/DEA—008

System name: Investigative Reporting and Filing System

\* \* \* \* \* \*

Categories of individuals covered by the system:

A. Drug offenders.

B. Alleged drug offenders.

C. Persons suspected of drug offenses.

D. Confidential informants.

E. Defendants.

F. Witnesses.

G. Non-implicated persons with pertinent knowledge of some circumstance or aspect of a case or suspect. These are pertinent references of fact developed by personal interview or third party interview and are recorded as a matter for which a probable need for recall will exist. In the regulatory portion of the system, records are maintained on the following categories of individuals: A) Individuals registered with DEA under the Comprehensive Drug Abuse Prevention and Control Act of 1970; B) Responsible officials of business firms registered with DEA; C) Employees of DEA registrants who handle controlled substances or occupy positions of trust related to the handling of controlled substances; D) Applicants for DEA registration and their responsible employees.

Categories of records in the system: The Investigative Reporting and Filing System includes, among other things, a system of records as defined in the Privacy Act of 1974, Individual records, i. e., items of information on an individual may be decentralized in separate investigative file folders. Such records as well as certain other records on persons and subjects not covered by the act, are made retrievable and are retrieved by reference to the following sub-systems.

\* \* \* \* \* \*

The basic document contained in these files is a multi-purpose report of investi-

gation (DEA–6) on which investigative activities and findings are rigorously documented. The reports pertain to the full range of DEA criminal drug enforcement and regulatory investigative functions that emanate from the Comprehensive Drug Prevention and Control Act of 1970. Within the categories of files, listed above, the general file category includes preliminary investigations of a criminal nature, certain topical or functional aggregations and reports of pre-registrant inspections/investigations. The case files cover targeted conspiracies, trafficking situations and formal regulatory audits and investigations. Frequently the criminal drug cases are the logical extension of one or more preliminary investigations. The distinction between the case file and general file categories, therefore, is based on internal administrative policy and should not be construed as a differentiation of investigation techniques or practices. These files, except for Confidential Informant Files, contain also adopted reports received from other agencies to include items that comprise, when indexed, individual records within the meaning of the Act. The central files maintained at DEA Headquarters include, in general, copies of investigative reports and most of the supporting documents that are generated or adopted by DEA Headquarters and field offices.

\* \* \* \* \* \*

Routine uses of records maintained in the system, including categories of users and the purposes of such uses: This system may be used as a data source or reference facility for numerous summary, management and statistical reports produced by the Drug Enforcement Administration. Only on rare occasions do such reports contain identifiable individual records. Information contained in this system is provided to the following categories of users as a matter of routine use for law enforcement and regulatory

agencies: C) Foreign law enforcement agencies with whom DEA maintains liaison; D) The Department of Defense and Military Departments; E) The Department of State; F) U. S. intelligence agencies concerned with drug enforcement; G) The United Nations; H) Interpol; I) To individuals and organizations in the course of investigations to elicit information.

*In addition, disclosures are routinely made to the following categories for the purposes stated: A) To federal agencies for national security clearance purposes and to federal and state regulatory agencies responsible for the licensing or certification of individuals in the fields of pharmacy and medicine* ; B) To the Office of Management and Budget upon request in order to justify the allocation of resources; C) To State and local prosecutors for assistance in preparing cases concerning criminal and regulatory matters; D) To the news media for public information purposes. E) To respondents and their attorneys for purposes of discovery, formal and informal, in the course of an adjudicatory, rule-making, or other hearing held pursuant to the Controlled Substances Act of 1970.

41 Fed.Reg. 39925–39926 (1976) (emphasis added) [2]

In the case sub judice, the investigative report in question was a DEA–6 report. It was transferred to a state licensing agency. Thus the court finds that the transfer of the report was a routine use of the report and not prohibited by the Privacy Act.

The court would also note that there is independent statutory authority which permits the transferral of investigative reports to state licensing boards such as the one in question here. 21 U.S.C. § 873 provides in pertinent part as follows:

(a) The Attorney General shall cooperate with local, State, and Federal agencies concerning traffic in controlled substances and in suppressing the abuse of controlled substances. To this end, he is authorized to—

2. The court would note that these same regulations were readopted by the Department of Justice without change on September 30, 1977. *See* 42 Fed.Reg. 53301 (1977).

(1) arrange for the exchange of information between governmental officials concerning the use and abuse of controlled substances;

(2) cooperate in the institution and prosecution of cases in the courts of the United States and before the licensing boards and courts of the several States.

The Attorney General has promulgated regulations concerning the release of information by DEA. 28 C.F.R. § 0.103 (1976) provides:

(a) The Administrator of DEA is authorized—

(1) To release information obtained by DEA and DEA investigative reports to Federal, State, and local officials engaged in the enforcement of laws related to controlled substances.

(2) *To release information obtained by DEA and DEA investigative records to Federal, State, and local prosecutors, and State licensing boards, engaged in the institution and prosecution of cases before courts and licensing boards related to controlled substances.*

(3) To authorize the testimony of DEA officials in response to subpoenas issued by the prosecution in Federal, State, or local criminal cases involving controlled substances.

(b) Except as provided in paragraph (a) of this section, all other production of information or testimony of DEA officials in response to subpoenas or demands of courts or other authorities is governed by Subpart B of Part 16 of this chapter. However, it should be recognized that Subpart B is not intended to restrict the release of noninvestigative information and reports as deemed appropriate by the Administrator of DEA. For example, it does not inhibit the exchange of information between governmental officials concerning the use and abuse of controlled substances as provided for by section 503(a) of the Controlled Substances Act (21 U.S.C. 873(a)(1)). (emphasis added)

The report in question was released to a state licensing board. Therefore, based on 21 U.S.C. § 873 and the regulations promulgated thereunder, plaintiff's claim for relief under the Privacy Act must be denied.

Accordingly, plaintiff's motion for a temporary restraining order must be denied, defendants' motion to dismiss must be granted, and this case must be dismissed. An appropriate order will be entered.