**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas B. MILLER, Sr., a/k/a Crosby L. Powell, Defendant-Appellant.**

**No. 79–1442.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Feb. 19, 1981.

Decided March 9, 1981.

714

Lee J. Shapiro, Littleton, Colo., for defendant-appellant.

Marianne Wesson, Asst. U. S. Atty., Denver, Colo. (Joseph Dolan, U. S. Atty. and Roland J. Brumbaugh, Asst. U. S. Atty., Denver, Colo., on brief), for plaintiff-appellee.

Before McWILLIAMS, McKAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Defendant seeks review of his conviction on one count of mail fraud, a violation of 18 U.S.C. § 1341. We affirm.

Thomas B. Miller, Sr., also known as Crosby L. Powell, was in arrears on a motor vehicle loan from the Fort Worth National

Bank. After inquiry by the bank and an attempted repossession, Miller mailed a letter to the bank enclosing receipts of postal money orders, claiming that these receipts proved the disputed payments had been made. In fact, the receipts were falsified and the payments had not been made.

Miller raises two allegations of error: denial of effective assistance of counsel at trial and denial of his motion to suppress certain evidence. Each of the asserted errors is without merit.

The constitutional standard for representation by counsel was recently restated by this court: "[t]he Sixth Amendment demands that defense counsel exercise the skill, judgment and diligence of a reasonably competent defense attorney." *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir.), *cert. denied*, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). In support of his claim of ineffective assistance of counsel, Miller cites trial counsel's failure to call Miller's secretary as a defense witness. Whether to call a particular witness is a tactical decision and, thus, a "matter of discretion" for trial counsel. *United States v. Dingle*, 546 F.2d 1378, 1385 (10th Cir. 1976). While "[i]t is error not to call a witness when that witness would present the only defense available," *id.*, we cannot say that it is improper to fail to call a witness whose testimony, as here, would only have been cumulative in nature.

Miller also argues that counsel was less than diligent in his failure to examine more closely the role of Miller's parole officer in the investigation leading to these criminal charges. Miller's allegations reflect his dissatisfaction at losing the case below. That outcome, however, is not necessarily a reflection of counsel's skill or performance, and will not alone support a claim of inadequate representation. *United States v. Vadar*, 630 F.2d 792 (10th Cir. 1980). The record fails to sustain Miller's contention that his attorney did not meet the constitutional standard.

Miller contends further that certain information introduced at trial should have

been suppressed because the information was acquired by his parole officer in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The record shows that Miller voluntarily released this information to his parole officer in an interview at Miller's home. Miller argues that because of the imbalance in the parole officer-parolee relationship, this interview so closely resembled a "custodial interrogation" situation that *Miranda* warnings were required. We do not agree. It is settled that those warnings are required only when the suspect "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda, id.* at 444, 86 S.Ct. at 1612, *cited in United States v. Bridwell*, 583 F.2d 1135, 1138 (10th Cir. 1978). As Miller was neither deprived of his freedom of action nor questioned in a coercive environment, the parole officer was not required to give him the *Miranda* warnings prior to their conversation.

Finally, Miller argues that certain documents he released to his parole officer were subsequently disclosed to either the FBI or to postal inspectors in violation of the Privacy Act, 5 U.S.C. § 552a.[1] This unauthorized disclosure, Miller contends, compels suppression of the documents. Although the Privacy Act proscribes certain disclosures of information without an individual's consent, the disclosure of records for routine uses is specifically authorized. 5 U.S.C. § 552a(b)(3). Once Miller turned the records over to his parole officer, they became part of the Justice Department's supervision files. While such files are covered by Privacy Act provisions, the release of the records to further a criminal investigation qualifies as a "routine use" under Justice Department regulations:

"(g) In the event that material in this system indicates a violation or potential

violation of law, whether civil, criminal or regulatory in nature, and whether arising by general statute, or by regulation, rule or order issued pursuant thereto, the relevant records may be referred to the appropriate agency, whether Federal, State, local or foreign, charged with the responsibility of investigating or prosecuting such violation or charged with enforcing or implementing the statute, or rule, regulation or order, issued pursuant thereto.

43 Fed.Reg. 30141. Consequently, no violation of the Privacy Act occurred.

Affirmed.

---

1. Miller also contends that either the Postal Inspectors or the FBI obtained records from the Fort Worth National Bank pertaining to Miller's account and his use of money orders. He asserts that a national bank is an agent of the federal government within the meaning of the Privacy Act so as to make unlawful the disclosure of these bank documents. We disagree. The applicable section of the Privacy Act, 5

U.S.C. § 552(e) defines "agency" as including "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." We do not believe this restrictive language was intended to encompass national banks.