# Disclosure of Parolees' Names to Local Police

United States Parole Commission's proposed disclosure of information on parolees to local law enforcement authorities could be justified as a "routine use" under the Privacy Act. However, in a case where there is no reason to suspect the involvement of a particular individual in criminal activity, such blanket disclosure could be challenged as an unwarranted expansion of the "routine use" exception.

March 26, 1982

## MEMORANDUM OPINION FOR THE DEPUTY ASSOCIATE ATTORNEY GENERAL

This responds to your request for our opinion whether the Privacy Act, 5 U.S.C. § 552a (1976), bars the United States Parole Commission from disclosing to local law enforcement authorities, on a routine basis, the names of parolees released into their communities. We believe that release of names and limited background information could be authorized as a "routine use" under the Privacy Act. We caution, however, that such blanket disclosures of information for law enforcement purposes, absent any reason to suspect the involvement of a particular individual in criminal activity, are not clearly contemplated by the Privacy Act, as explained in its legislative history.

Although we believe that the broad discretion afforded federal agencies to classify "routine uses" and the legitimate law enforcement purpose of the disclosures support our conclusion that blanket disclosures could be authorized as "routine uses," that conclusion could well be challenged in litigation as an unwarranted expansion of the "routine use" exception. Accordingly, the Parole Commission may want to proceed cautiously and to consider whether alternatives short of routine, blanket disclosures of the identity of all parolees released into a community will meet the legitimate law enforcement needs of local law enforcement authorities.

## I. Background

At least since 1976, the Parole Commission has not routinely released parolees' names to local police when parolees are placed under supervision in a locality. Regulations promulgated in 1976 to implement the newly adopted

227

Parole Còmmission and Reorganization Act, 18 U.S.C. §§ 4201–4218 (1976), provided that:

> Names of parolees under supervision will not be furnished to a
> police department of a community, except as required by law. All
> such notifications are to be regarded as confidential.[1]

In 1978 the regulation was amended by the addition of the language emphasized below to allow the Commission to authorize release of names on a case-by-case basis:

> Names of parolees under supervision will not be furnished to a
> police department of a community, except as required by law, *or
> as authorized by the United States Parole Commission*. All such
> notifications are to be regarded as confidential.

28 C.F.R. § 2.37(b) (1981).[2] Because of concerns that unnecessary release of such information could be counterproductive to reintegration of a parolee into the community, the Parole Commission stated that it would exercise that authority only "where clearly warranted by specific circumstances." *See* 43 Fed. Reg. 38823 (1978). Such circumstances could include, for example, a specific request by a local police department that is investigating a series of crimes in a community and has reason to believe that particular federal parolees may be involved.

The Commission is now considering whether to change its current policy and to authorize disclosure to appropriate local law enforcement authorities, without prior case-by-case approval, of the names of all parolees released into a community. This consideration has been prompted primarily by concerns of local law enforcement agencies that the release of parolees' names locally only under special circumstances and only upon request has been insufficient to assist them in apprehending federal parolees who commit crimes while on parole. The purpose of such disclosures, therefore, would be to assist local police generally in their law enforcement and investigative efforts.

Although the Commission has not yet considered what other information would be disclosed with the names of parolees, we understand that at a minimum certain identifying information such as physical characteristics and fingerprints

---

[1] 28 C F.R. 2.37 (1977). The Parole Commission's regulations prior to the Reorganization Act provided generally for confidentiality of parole records in accordance with several "principles " They provided, for example, that dates of sentence and commitment, parole eligibility dates, mandatory release dates and dates of termination of sentence would be disclosed "in individual cases upon proper inquiry by a party in interest", that the effective date set for parole would be disclosed by the Parole Board "whenever the public interest is deemed to require it", and that "other matters" would be held strictly in confidence and not disclosed to "unauthorized persons." *See* 38 Fed Reg. 26652, 26657 (1973).

[2] It appears that this amendment may have been necessary to reflect the Commission's actual practice prior to 1978. The accompanying summary in the Federal Register notice of the final rule states that the regulation "makes a conforming expression of the Commission's policy as to disclosure of names of parolees to local police " 43 Fed Reg. 38823 (1978)

At the same time, a new subsection (a) was added to the regulation and a new "routine use" published that provided for release of information to individuals who may be exposed to harm through contact with the parolee "if such disclosure is deemed by a Commissioner to be reasonably necessary to give notice that such danger exists." 28 C.F.R § 2.37(a) (1981); 43 Fed. Reg. 38823 (1978) It is our understanding that the Commission is not considering revision of this policy. We therefore do not address it here

and the nature of the crime for which the parolee was convicted would also be disclosed. This information would be drawn from the Parole Commission's Inmate and Supervision files, which include basic information on current inmates under the custody of the Attorney General, former inmates who are still under supervision as parolees, and mandatory releases. *See* 46 Fed. Reg. 60337 (1981).

## II. Analysis

You have asked us whether the Privacy Act prohibits the Commission from adopting a policy of routine disclosure of parolees' names to local police for law enforcement purposes.[3] The Privacy Act prohibits any federal agency from disclosing, without the prior consent of the individual involved, information about that individual contained in a "system of records" maintained by that agency. 5 U.S.C. § 552a(b).[4] The Parole Commission's Inmate and Supervision files are such a system of records. *See* 46 Fed. Reg. 60337 (1981). Disclosure may be made without prior consent, *inter alia*, if the disclosure is for a "routine use" of the agency—*i.e.*, a use which is "compatible with the purpose for which [the record is] collected." 5 U.S.C. § 552a(b)(3) (1976).[5] The dispositive question, therefore, is whether disclosure of parolees' names to state and local law enforcement agencies may be published as a "routine use."

The legislative history of the Privacy Act and subsequent judicial interpretations of its scope do not provide much guidance as to the outer limits of the "routine use" exception. The intent of the exception, as expressed during debate on the bill, was to avoid prohibiting "necessary exchanges of information, providing its rulemaking procedures are followed." Congress apparently did want "to prohibit gratuitous, ad hoc, disseminations for private or otherwise irregular purposes." *See* 120 Cong. Rec. 36967 (1974) (remarks of Cong. Moorhead). Both Congress and the courts have recognized that considerable latitude should be afforded to the agencies that maintain records subject to the Privacy Act to define the "routine uses" of information in those records. *See id; see also Ash* v. *United States*, 608 F.2d 178, 179 (5th Cir. 1979), *cert. denied*, 445 U.S. 965 (1980) (public disclosure of names, offenses, and punishment of seamen is "routine use"); *Harper* v. *United States*, 423 F. Supp. 192, 198 (D.S.C. 1976) ("The Privacy Act contemplates that agencies must disclose certain information regarding individuals as an ordinary consequence of performing their routine agency duties."). *Cf. Local 2047, AFGE* v. *Defense*

---

[3] We note preliminarily that the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201–4218, which provides for the general regulatory authority of the Parole Commission, does not prohibit the disclosure of parolees' names or other parolee information.

[4] The Act defines a "system of records" as a "group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5) (1976)

[5] The Privacy Act also provides for disclosure of records without prior consent to a criminal or civil law enforcement agency within the United States, if the law enforcement activity of that agency is authorized by law and if the head of the agency has made a "written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought." 5 U.S.C. § 552a(b)(7) (1976). Because this subsection requires a request for *specific information, it would not authorize the type of* blanket disclosure of names contemplated by the Parole Commission.

229

*General Supply Center,* 573 F.2d 184, 186 (4th Cir. 1978) (agency's refusal to authorize disclosure of names of employees as a "routine use" not unreasonable).[6] The primary check that is provided on the agency's discretion is the requirement that all "routine uses" be published in the Federal Register for notice and comment. 5 U.S.C. § 552a(e)(4), (11).

It is clear that the purpose of a disclosure of information as a "routine use" need not be the same as the purpose for which the information was collected, but only "compatible with" that purpose. *See* Office of Management and Budget, Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28948, 28953 (1975). For example, a referral to the appropriate law enforcement agency of information showing an apparent violation of the law, for the purpose of investigation and prosecution, can be a "routine use," even though the information was collected for a purpose other than law enforcement. *See* 120 Cong. Rec. 36967 (1974) (remarks of Cong. Moorhead); *Burley* v. *DEA,* 443 F. Supp. 619, 623 (M.D. Tenn. 1977) (transfer of Department of Justice's investigative reports to state licensing agency for use in license revocation hearing is a "routine use"). In particular, the disclosure of certain information by the Parole Commission to other federal or state agencies has been held to be a "routine use," at least if that information indicates a violation or potential violation of law and is necessary for investigative or enforcement efforts by the receiving agency. *See United States* v. *Miller,* 643 F.2d 713, 715 (10th Cir. 1981) (release by parole officer of documents necessary to further a particular criminal investigation to Federal Bureau of Investigation (FBI) postal inspectors is a "routine use"); *SEC* v. *Dimensional Entertainment Corp.,* 518 F. Supp. 773, 777 (S.D.N.Y. 1981) (release of parole hearing transcript to Securities and Exchange Commission for use in injunctive proceedings is a "routine use").

The contemplated policy of disclosing all parolees' names, whether or not information maintained by the Parole Commission or by local police authorities indicates involvement of any particular parolee in a crime, goes one step beyond disclosure of information in response to a specific request or for use in a particular criminal investigation. Although the disclosures would be for law enforcement purposes, it is possible that a blanket disclosure policy would be challenged, for instance by a parolee who is arrested after release of his name by the Parole Commission, as "gratuitous" and outside the scope of the "routine use" exemption. We do not believe that blanket, routine disclosures for legitimate law enforcement purposes are so far removed from the purpose for which the information is maintained by the Parole Commission that they would be consid-

---

[6] We are unaware of any court decisions that have found an agency's designation of a particular type of disclosure as a "routine use" to be unreasonable or arbitrary. Some courts that have found Privacy Act violations in the disclosure of information without prior consent have suggested that there are limits to the scope of the "routine use" exception, but have rested their decisions on the failure of the agency in question to make the required Federal Register publication of the "routine use." *See, e.g., Parks* v. *IRS,* 618 F.2d 677, 681 (10th Cir. 1980) (use of personnel files for solicitation in savings bond drive); *Zeller* v. *United States,* 467 F. Supp. 487, 503 (E.D.N.Y. 1979) (release of ICC investigative reports to individual license applicants).

ered incompatible with the purpose and therefore not "routine uses."[7] If the disclosure policy were challenged in litigation, however, the defense of the "routine use" exemption would rest, at least in part, on a showing that the disclosures are in fact necessary and relevant to local law enforcement efforts and that the information is used by local law enforcement agencies solely as an investigative tool, and not for the purposes of harassment or intimidation of parolees in the community. Concerns about the demonstrated need for a blanket disclosure policy, or for the potential misuse of the information by local police authorities may therefore be quite relevant to whether the disclosures may appropriately be made as "routine uses" under the Privacy Act.

Disclosure of parolees' names will be accompanied by release of some identifying information from the Parole Commission's Inmate and Supervision files. Much of the information maintained in those files would in most cases be unnecessary or irrelevant to any possible law enforcement or investigative efforts by local police, and should be released, if at all, only on a case-by-case basis, based on demonstrated need for the information. This would include, for example: information concerning the inmate's assignments and progress while in prison such as records of the allowance, forfeiture, withholding and restoration of good time credits; records and reports of work and housing assignments; performance adjustment and progress reports; transfer orders; mail and visit records; personal property records; safety reports; interview requests; and general correspondence. *See* 46 Fed. Reg. 60338 (1981). In addition, records relating to an inmate's application for parole or appeals from previous denials of parole, and court petitions and documents would generally not contain information necessary for local law enforcement efforts.

Especially given that blanket disclosures of the type being considered may stretch the limits of the "routine use" exception, we believe that disclosures of information on parolees made to local law enforcement agencies pursuant to a blanket disclosure policy must be narrowly limited to information that, on its face, will clearly assist those agencies in their efforts to investigate criminal activity within their communities. In most cases this should include, for example, no more than minimal identifying information (name, aliases, address, physical characteristics, fingerprints) and a brief description of the nature of the parolee's previous offense. This would not preclude release of additional information on a particular parolee, if the local authorities have reason to believe that individual is involved in a crime and can demonstrate need for the information.

---

[7] Other federal agencies have published "routine uses" that would appear to be broad enough to include the sort of disclosures under consideration by the Parole Commission here. *See, e.g.,* Bureau of Prisons, Inmate Central Records System, 46 Fed. Reg. 60291–92 (1981) ("routine uses" include "to provide information source to state and federal law enforcement officials for investigations, possible criminal prosecutions, civil court actions, or regulatory proceedings"); FBI Central Records System, *id.* at 60321 ("Information . . . may be disclosed as a routine use to any state or local government agency directly engaged in the criminal justice process . . . where access is directly related to a law enforcement function of the recipient agency, *e.g.*, in connection with a lawful criminal or intelligence investigation. . . ."). So far as we are aware, however, both of these agencies release information to local authorities only pursuant to a specific request, or if information maintained by the agencies indicates involvement in a criminal activity within the jurisdiction of local authorities

We do not believe, however, that the "routine use" exemption would cover release of any information beyond that minimally necessary for investigative efforts, absent a specific particularized need.

In order to implement a policy of blanket disclosure of parolees' names to local police, the Parole Commission would have to amend 28 C.F.R. § 2.37 (1981), which does not now explicitly authorize such disclosures,[8] and would have to publish in the Federal Register for notice and comment a new "routine use" covering such disclosures, in accordance with subsection (e)(11) of the Privacy Act, 5 U.S.C. § 552a(e)(11).

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[8] Section 2.37 as currently in force allows disclosure of parolees' names "as authorized by" the Parole Commission It might be possible for the Parole Commission to "authorize" such disclosures within the language of § 2.37. without amending the current language However, we believe such a blanket authorization would be inconsistent with the expressed purpose of the current version of the regulation. *See* 43 Fed. Reg 38823 (1978) Therefore. we recommend that the regulation be specifically amended to provide for the new disclosure policy