John DOE, a/k/a John L. Burton, Plaintiff-Appellant,

v.

NAVAL AIR STATION, PENSACOLA, FLORIDA and Mike Steele, Defendants-Appellees.

No. 84–3586.

United States Court of Appeals, Eleventh Circuit.

Aug. 14, 1985.

---

Michael P. Finney, Asst. U.S. Atty., Pensacola, Fla., for defendants-appellees.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant John Doe, a/k/a John L. Burton ("Burton"), appeals from the district court's dismissal of his *pro se* complaint brought under the Privacy Act of 1974, 5 U.S.C.A. § 522a, for failure to state a claim upon which relief can be granted. The dismissal was based on a magistrate's report and recommendation which the district court adopted without modification, and it was entered on the court's own initiative, prior to the defendants' appearance in the case. Since it does not appear beyond doubt that Burton can prove no set of facts that will make out the claim he presents against the Department of the Navy, we remand the case for further proceedings.

## BACKGROUND

In June of 1982, Burton was a civilian employee of the Naval Air Rework Facility

of the Pensacola Naval Air Station ("PNAS"). Burton, like all other military and civilian personnel at PNAS, had registered his automobile with PNAS' pass and tag office. This vehicle registration included his name, home address, and telephone number. On or about June 20, 1982, Mike Steele, a special agent of the Naval Investigative Service located at PNAS, was contacted by an agent of the Escambia County Sheriff's Department. The agent requested Burton's home address and phone number in furtherance of a criminal investigation which he was conducting. At this point, Steele released Burton's home address and phone number which had been derived from the pass and tag office's vehicle registration records. Subsequently, and presumably on the basis of the information given, Burton was arrested at his home.

## DISCUSSION

 Burton claims that Steele's disclosure to the Escambia County Sheriff's Department of his home address and phone number was a violation of 5 U.S.C.A. § 552a(b) which provides:

> Conditions of disclosure—No agency [1] shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains....

Section 552a(b), however, provides several exemptions from the general non-disclosure requirement quoted above. The district court ruled that the disclosure of Burton's home address and phone number by Steele to the Escambia County Sheriff's

Department was a "routine use" of PNAS' vehicle registration system. *See* 5 U.S.C.A. § 552a(b)(3). The routine use exemption requires the governmental agency to publish the routine uses of the relevant records in the Federal Register. *See id.;* 5 U.S.C.A. §§ 552a(a)(7) (defining routine use as "the use of such record for a purpose which is compatible with the purpose for which it was collected"); 552a(e)(4)(D) (setting out the requirement that the agency publish the routine uses annually in the Federal Register). In 1982, the year in which Burton's record was disclosed, the Department of the Navy set out the routine uses for its "vehicle control system" in the Federal Register. Individuals covered by the system included "[a]ll individuals that have vehicles registered at a particular Navy installation...." 47 Fed.Reg. 2686 (Jan. 18, 1982). The routine uses of PNAS' vehicle control system is set out in the Federal Register as follows:

> ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES: Used as a car pool locator, vehicle registration, parking control system, insurance verification system to verify issue of license when individual has lost his or her operator's card, and may be referred to by security or safety officials to determine individual's previous driving record.

47 Fed.Reg. 2686 (Jan. 18, 1982).

The district court, in concluding that the law enforcement use in this case was a routine use, failed to refer to the routine uses set out in the Federal Register, and thus got off on the wrong track. When the scope of routine uses is confined by the published definitions, it is clear that the

---

1. "Agency" is defined as "any executive department, *military department,* Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C.A. § 552(e) (emphasis added). The district court held that "it is patently clear" that PNAS is not an agency as defined above. We need not decide whether PNAS is an "agency" within the meaning of the Privacy Act. On

remand, the district court should grant Burton leave to amend to add the Department of the Navy as a defendant. Without question, the Department of the Navy, of which PNAS is certainly a sub-agency or instrumentality, is a "military department" under 5 U.S.C.A. § 552(e). We note that Burton has also named Mike Steele as a defendant. Steele is definitely not an "agency" and, thus, should be dismissed as a defendant in this lawsuit.

release by PNAS of vehicle registration information to outside law enforcement agencies to assist in their on-going criminal investigations is not a routine use. Two of the uses set out in the Federal Register relate to internal vehicle management, *i.e.*, to facilitate carpooling and the actual parking of automobiles. Another use envisions the use of a record to verify that an individual is properly licensed and insured (and to correlate these two factors) when the individual's license has been lost. The only routine use concerning "security" purposes explicitly limits access to vehicle registration records by "security or safety officials" for the purpose of determining the individual's previous driving record, a use obviously distinct from aiding a law enforcement agency in its criminal investigation.

■ Finally, the routine use denominated "vehicle registration system" appears simply to restate the general purpose of the system of records which is to maintain an "[a]lphabetical file of each individual who have [sic] vehicles registered ..." at Department of the Navy installations. 47 Fed.Reg. 2686. There is no indication, either explicit or implicit, that the term "vehicle registration system" authorizes the dissemination of vehicle registration records to outside agencies to assist such agencies in criminal investigations. Moreover, to infer a law enforcement purpose from the general routine use of "vehicle registration system" would violate the statutory construction principle of *ejusdem generis*, *i.e.*, unless a contrary intention is manifested, general words or principles, when appearing in conjunction with particular classes of things, will not be considered broadly, but rather will be limited to the meaning of the more particular and specific words. As we have indicated, the specific routine uses clearly relate to parking control, insurance verification and de-

termination of the registrant's previous driving record, none of which envision the use employed by Mike Steele in releasing Burton's home address and telephone number.

In light of the foregoing analysis, the cases cited by appellees are clearly distinguishable. In *United States v. Miller*, 643 F.2d 713 (10th Cir.1981), and *Burley v. United States Drug Enforcement Agency*, 443 F.Supp. 619 (M.D.Tenn.1977), federal agencies whose primary purpose is law enforcement,[2] released information to aid in criminal or quasi-criminal investigations. In both cases, the agency maintaining the relevant records had published routine uses in the Federal Register as required by 5 U.S.C.A. § 552a(e)(4)(D). These routine uses clearly entailed the law enforcement disclosure which was made in each case. *See Miller*, 643 F.2d at 715 (allowing disclosure of parole record to federal, state, local or foreign authorities for civil, criminal or regulatory law enforcement purposes; routine use described at 43 Fed.Reg. 30141); *Burley*, 443 F.Supp. at 623–24 (setting out in great detail the routine uses of DEA investigative reports and files for law enforcement and related activities, specifically including disclosure to state agencies with regard to licensing and certification in the field of pharmacy; *see* 41 Fed.Reg. 39925–39926). The routine uses of PNAS' vehicle registration system do not, as we have indicated, envision the type of law enforcement uses which were provided by regulation in *Miller* and *Burley*.

■ Thus, the disclosure in this case cannot be rendered legal under the Privacy Act's routine use exemption.

■ We turn, then, to the question whether the disclosure of Burton's home address and telephone number was permissible under the Privacy Act exemption which specifically relates to law enforce-

---

**2.** Both cases involved routine uses of records by divisions of the United States Department of Justice. In *Miller,* the United States Parole Commission released an individual's parole records to the FBI (an agency also under the aegis of the Department of Justice) and the

United States Postal Service. In *Burley,* the Drug Enforcement Agency released records (an investigative report relating to Burley's pharmacy business) to the Tennessee Board of Pharmacy.

ment. This exemption permits the disclosure of an individual's record by the agency holding the record

> to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought. . . .

5 U.S.C.A. § 552a(b)(7). As indicated above, exemption (b)(7) requires a *written* request for disclosure by the head of the agency making such request to the agency which maintains the record. Burton alleges in his complaint that Steele released his home address and telephone number over the telephone pursuant to a request from the Escambia County Sheriff's Department which was presumably made over the telephone. *See also* Appellee's Brief at 7 ("state authorities made a verbal request"). This, of course, is not conclusive of the method by which the request for Burton's home address and telephone number was made or whether it was made by the "head" of the Escambia County Sheriff's Department.[3] In any event, it is clear that on the facts of this case as pleaded a motion to dismiss could not have been granted on the basis of the law enforcement exemption. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (complaint may not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) unless it appears beyond doubt that no set of facts can be proved in support of plaintiff's claim for relief).

In light of the foregoing, we vacate the district court's judgment in favor of the Naval Air Station, Pensacola and remand for further proceedings not inconsistent with this opinion.

With respect to the individual defendant, Steele, we affirm the district court's judgment dismissing the lawsuit as to him. *See supra* note 1.

AFFIRMED in part, VACATED in part, and REMANDED.

---

**3.** As we have noted *supra,* the district court dismissed Burton's complaint before PNAS or Mike Steele had responded to it. We note, however, that the magistrate declined to rule on the law enforcement exemption because "the request by the Escambia County Sheriff's Department may not have been in writing. . . ." *See* Record at 10.