**Tomas REYES, Plaintiff, Appellant,**

v.

**The SUPERVISOR OF the DRUG EN-
FORCEMENT ADMINISTRATION,
et al., Defendants, Appellees.**

**No. 87–1019.**

United States Court of Appeals,
First Circuit.

Submitted July 31, 1987.

Decided Dec. 8, 1987.

Tomas Reyes, pro se.

Osvaldo Carlo Linares, Asst. U.S. Atty., and Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., on brief, for federal defendants-appellees.

Before CAMPBELL, Chief Judge, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

Plaintiff, acting *pro se*, initially filed a complaint in the United States District Court for the Northern District of Texas. That court transferred the action on its own motion to the District of Puerto Rico, which granted an order dismissing the complaint for failure to state a claim, 647 F.Supp. 1509. Reyes' complaint apparently attempted to state a violation of the Priva-

cy Act, 5 U.S.C. § 552a (1982 and Supp. IV, 1986), and violations of the fourteenth and fifth amendments to the U.S. Constitution.

The main issues raised on appeal regard the exhaustion requirements of the Privacy Act, and the requirements of a claim under 42 U.S.C. § 1983 (1982) for alleged dissemination of erroneous information regarding the plaintiff's criminal history.

## I. *Facts*

After a Freedom of Information Act request to the Drug Enforcement Administration (DEA), that agency released to plaintiff a series of documents including the investigative report that sowed the seeds of this litigation. That report states, in part, that "Reyes-Peña was or is a member of the FALN (a New York city based Puerto Rican terrorist group) who is heavily involved *in narcotics as a means to finance terrorist activities.*"

The source of this information was, apparently, the Puerto Rico Police Department (PRPD). The DEA has disclosed this information to several federal agencies, including the FBI, the United States Probation Office, the United States Attorney's Office and the Bureau of Prisons. Plaintiff alleges that this was done without the written requests required by the Privacy Act, and that the information was relied upon in several instances to deprive him of his liberty.

In 1984 Reyes filed a Correction of Records request with the DEA, dated September 26. He requested that the DEA verify the accuracy of this information, or correct it. The DEA, on October 29, acknowledged receipt of the request and responded that it would deal with his request along with those of other persons, in the order in which they were received. Plaintiff also wrote the United States Attorney for the District of Puerto Rico and the PRPD concerning the same issue. Neither the United States Attorney's Office nor the PRPD acknowledged receipt of the letter.

Plaintiff essentially claims that the assertion that he is a terrorist is completely unfounded, that it was relied upon to impose a maximum sentence for a relatively

minor crime, that it was the basis for the denial of several applications for furlough during the term of his imprisonment, that it was the reason for placing him in solitary confinement when he first arrived in prison, and that because of it he was extensively and unconstitutionally interrogated and temporarily denied access to his attorney by the two FBI agents who are named defendants herein, also during his imprisonment.

## II. *Discussion*

When reviewing an order granting a motion to dismiss a *pro se* complaint, "[t]he . . . test is not whether the facts alleged in the complaint would entitle the plaintiff to relief. Rather, it is whether the Court can say with assurance on the basis of the complaint that, beyond any doubt, no set of facts could be proved that would entitle the plaintiff to relief." *Estelle v. Gamble,* 429 U.S. 97, 112, 97 S.Ct. 285, 295, 50 L.Ed.2d 251 (1976) (Stevens, J., dissenting) (citing *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

Under the facts alleged in the complaint, and in view of the relief requested, it appears that the plaintiff presented a claim under the Privacy Act of improper disclosure of information to other agencies; a petition under the Privacy Act to amend his files in the various agencies; and a § 1983 claim against the PRPD for deprivation of his constitutional rights under the fourteenth amendment. The district court also considered its equitable powers to expunge Reyes' records, but declined to exercise them. Each of these claims will be discussed seriatim.

### A. *Improper change of venue*

■ As a preliminary matter, Reyes challenges the order transferring the case to Puerto Rico. He correctly points out that the transfer must be to a jurisdiction where the action could have been brought in the first place. 28 U.S.C. § 1404(a). However, the United States District Court for the Northern District of Texas (". . . the district in which the complainant resides . . ." 5 U.S.C. § 552a(g)(5)) is not the only court with jurisdiction. The district court of Puerto Rico (". . . in which the agency records are located . . ." 5 U.S.C. § 552a(g)(5)) also could have entertained the claim and it seems not an abuse of discretion to transfer the case to the district where most of the defendants reside.

Furthermore, plaintiff failed to challenge the order in the Northern District of Texas (indeed, at all, until now), and there is substantial authority to conclude that we are precluded from reviewing an order of this nature by a district court in another circuit. *See* 28 U.S.C. § 1294(1) (appeals to be taken to the court of appeals for the circuit embracing the district). *See also Roofing & Sheet Metal Serv. v. La Quinta Motor Inns,* 689 F.2d 982 (11th Cir.1982), and authorities discussed therein. We therefore do not disturb the decision to change venue.

### B. *Improper disclosure of information*

■ The Privacy Act provides explicit guidelines for the disclosure of information, even to other agencies. The district court correctly states that 5 U.S.C. § 552a(b)(7) permits release of information to other agencies involved in criminal law enforcement activities. However, that subsection goes on to authorize release only *"if* the activity is authorized by law, *and if* the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought." 5 U.S.C. § 552a(b)(7) (emphasis added); *see Doe v. Naval Air Station, Pensacola, Florida,* 768 F.2d 1229 (11th Cir. 1985). Plaintiff clearly claims that the agencies did not observe these requirements, and nowhere in the record is there any indication that the agencies did in fact comply with the pertinent provisions. A claim for damages for the violation of this provision could, therefore, be proven at trial.

In this case, then, a liberal reading of the complaint might in other circumstances require us to remand the improper disclosure claim for trial. All of the disclosures com-

plained of, however, occurred between 1979 and 1980. This complaint was not filed until November of 1984. The jurisdictional subsection of § 552a clearly states that "[a]n action to enforce any liability created under [§ 552a] ... may be brought within two years from the date on which the cause of action arises...." 5 U.S.C. § 552a(g)(5).

Ordinarily, an affirmative defense, such as the running of a limitations period, must be asserted in the first responsive pleading or waived. Fed.R.Civ.P. 8(c). *See, e.g., Jacobsen v. Mass. Port Authority,* 520 F.2d 810 (1st Cir.1975) (statute of limitations is within residual clause of Rule 8(c)).

However, the complaint was treated below by all the parties and the court, as a petition for amendment or expungement of records, not a claim for damages under § 552a(g)(4) or (i)(1). On one hand, the federal defendants' complete failure to address this issue on appeal can only be characterized as willful blindness, since Reyes devotes a substantial portion of his brief to clearly establishing their potential liability under these two subsections. But on the other hand, since the relief sought below was almost purely injunctive, with only the habitual cursory reference to "such other and further relief that the court deems to be appropriate and just," it cannot be said that the defendants had proper notice of this claim for damages until the appeal.

In the interest of fairness, therefore, if we remanded for trial on this count we would also have to allow defendants to respond to all the issues presented by the claim. Since the limitations period has run, and would bar the claim, it would be futile to remand.[1]

---

**1.** Reyes did allege one communication that took place in 1984, between the United States Attorney's office and the prison officials, that could be seen as a disclosure subject to the Privacy Act:

> 12. On August 29, 1984 plaintiff had requested a furlough to comply with an examination required by the University of Puerto Rico towards the completion of a Master's degree.
> 13. On September 13th, two days before the furlough, Mr. Marvin McCord, Unit Manager, informed plaintiff that the U.S. District Attorney's Office to Puerto Rico opposed to plaintiff's trip based on information contained in their records relating to terrorist groups.

## C. *The action to amend or expunge the records on file*

 The Privacy Act of 1974 also provides certain procedures to amend any portion of any file which an individual feels is inaccurate:

(d) Access to records.—Each agency that maintains a system of records shall—

\* \* \* \* \* \*

(B) promptly, either—

(i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or

(ii) inform the individual of its refusal....

5 U.S.C. § 552a(d).

Of those defendants named in the complaint, most were properly dismissed. The Warden, Keohane, partially heeded Reyes' petition, and deleted a portion of a memorandum which stated the plaintiff was a terrorist, saying "[t]he information source upon which the memorandum was based has been contacted.... [T]he writer of the memorandum determined in part that it was inaccurate." He then advised Reyes of his right to appeal concerning any other information that may be in the files. Reyes did not avail himself of that opportunity. The second amended complaint drops all claims against the PRPD and the Police Superintendent except for the constitutional claims we examine below. The FBI was not asked to amend its records, so Reyes cannot claim that this agency did not comply with a request under § 552a.

---

Plaintiff's Original Complaint, at 3.

However, a communication is not a "disclosure" subject to the Act, unless it imparts information to someone who does not already know it. *See, e.g., Pellerin v. Veterans Administration,* 790 F.2d 1553, 1556 (11th Cir.1986); *FDIC v. Dye,* 642 F.2d 833, 836 (5th Cir.1981). By Reyes' own allegations, both the United States Attorney, who imparted the information, and the Bureau of Prisons, who received it, had been privy to Reyes' alleged connections with terrorism since at least 1980. This episode, therefore, cannot form the predicate for a successful Privacy Act claim.

The DEA is a proper party, and was requested to amend its files. The district court dismissed Reyes' claim against it, however, because he did not exhaust the administrative remedies provided by the agency under the Act.[2]

Reyes argues, however, that he did exhaust his remedies, because the DEA failed to acknowledge receipt of the request before the 10 days required under § 552a(d)(2)(A). He argues that this is itself a "fail[ure] to comply," under § 552a(g)(1)(D), which would allow for a civil remedy.

That subsection, however, requires that the failure to comply have an adverse effect on the individual. The delay of at most fifteen days in acknowledging receipt of his request, followed by a prompt response to the request, is not the cause of any adverse effects on Reyes. The damage complained of is, rather, the existence of the records, and their earlier dissemination.

A failure to answer within the time limits prescribed by the statute may, of course, be treated as a failure to review an individual's record under § 552a(g)(1)(A), as long as the suit is filed before a response actually takes place. Reyes, however, had already been notified of the agency's willingness to answer before he filed suit, and cannot, therefore, claim under that subsection. He knew before he instituted this action, that the DEA was at least willing to process his claim, and he is properly required to avail himself of the administrative procedures provided for that purpose.

The United States Attorney's Office, on the other hand, has apparently not responded at all to Reyes' request. The office does not contest that it is an "agency" within the meaning of the Privacy Act. Instead, the named defendant, López–Romo, who was sued in his official capacity as head of the United States Attorney's Office in Puerto Rico, successfully defended on the basis that § 552a authorizes suits only against "agencies" and not individuals.

It seems clear, however, that the complaint could be amended to name the United States Attorney's Office, and that the agency was on notice that it was the proper party defendant, in which case the amendment would relate back to the time of the original complaint. Fed.R.Civ.P. 15(c); *see Hewitt v. Grabicki*, 794 F.2d 1373, 1377 (9th Cir.1986) (also reviewing conflicting authority on the propriety of making the head of an agency the defendant). Under Fed.R.Civ.P. 15(a), amendments should be freely granted "when justice so requires."

In fact, Reyes was apparently willing to institute wholly new actions against the proper federal parties, and petitioned the court, in a motion to amend the complaint, to dismiss without prejudice the claims against them, in order to do so. The court indicated it would grant the motion, but went on to rule on the merits of these claims. We therefore, remand, with leave to amend the complaint in order to name the United States Attorney's Office, so that Reyes may set out his claim against that office for failure to amend records pertaining to him.

### D. *The § 1983 claim against Collazo and the PRPD* [3]

▪ We agree that the claims in federal court for damages against Collazo in his

---

**2.** Each agency that maintains a system of records shall—

\* \* \* \* \* \*

(3) permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal, and not later than 30 days (excluding Saturdays, Sundays, and legal public holidays) from the date on which the individual requests such review, complete such review and make a final determination unless, for good cause shown, the head of the agency extends such 30–day period; and if, after his review, the reviewing official also refuses to amend the record in accordance with the request, permit the individual to file with the agency a concise statement setting forth the reasons for his disagreement with the refusal of the agency, and notify the individual of the provisions for judicial review of the reviewing official's determination under subsection (g)(1)(A) of this section.

5 U.S.C. § 552a(d)(3).

**3.** This case has not been treated, either below or on appeal, as stating a constitutional claim for damages against the named FBI agents, or other

official capacity and the Police Department are precluded by the eleventh amendment, since they must, if successful, be satisfied from the coffers of the Commonwealth of Puerto Rico. For these purposes, we have treated the Commonwealth and its agencies as a state. *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 776 n. 7 (1st Cir.1981). Plaintiff has also failed to allege any acts by Collazo himself that may subject the Superintendent personally to § 1983 liability.

While injunctive relief against the head of an agency is not barred, *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), we think it cannot issue in this case. The Supreme Court has said that if the plaintiff "has made no showing that he is realistically threatened by a repetition of his experience ..., then he has not met the requirements for seeking an injunction in a federal court, whether the injunction contemplates intrusive structural relief or the cessation of a discrete practice." *Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983).

Reyes has not argued that he is being subjected to any continuing infringement of a liberty interest, or that he realistically expects a repetition of his previous experiences. Unlike the plaintiff in *Paine 'v. Baker*, 595 F.2d 197 (4th Cir.1979), who was in prison and did not want his future parole decisions to be based on erroneous information, Reyes has shown no upcoming decision affecting his liberty that could be based on these files.

The Supreme Court has clearly held that the interest in a good name or good reputation does not trigger the due process clause, in spite of the fact that branding someone a criminal (or terrorist as in this case) entails substantial disadvantages.

*Paul v. Davis*, 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). At this point Reyes cannot point with any certainty to future harm in any way more grievous than that shown by the plaintiff in *Paul v. Davis*. He therefore has no standing to claim prospective injunctive relief.[4]

Finally, to assert a § 1983 claim for willful dissemination of false information against the agency, Reyes must either allege that the entire PRPD was involved, *see Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), or join the individuals who generated or communicated that information, as well as demonstrate that it was relied upon to deprive him of some interest protected by the constitution. It is undisputed that Collazo was not personally involved in any of the events portrayed in the complaint. Nor is there any indication of a pattern or policy implicating the entire PRPD. On this count, therefore, we affirm the district court's dismissal of Collazo and the PRPD from the complaint.

### E. *Equitable Expungement*

■ Finally, the court below did not commit reversible error by refusing to exercise its equitable discretion to expunge Reyes' files. That power is a narrow one, *U.S. v. Linn*, 513 F.2d 925, 927 (10th Cir.1975), and has been used more often to expunge records of unconstitutional convictions. *See, e.g., United States v. McMains*, 540 F.2d 387, 389–90 (8th Cir.1976), and authorities cited therein. Furthermore, Reyes has still before him administrative avenues through which to seek redress. He may or may not present a more compelling case once he has exhausted all possible sources

individual federal defendants, under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), *see Bukhari v. Hutto*, 487 F.Supp. 1162 (E.D.Va. 1980), but simply as a petition to amend under the Privacy Act. We express no opinion as to the merits of a *Bivens* claim.

**4.** Even if we were to find that due process requires that Reyes be granted an opportunity to be heard, it appears that that opportunity

already exists, and is open for Reyes to use. 4 L.P.R.A. § 531 establishes a procedure through which to challenge information in PRPD files. If plaintiff succeeds in amending his files with the PRPD, letters of correction should issue to all other agencies to whom that information was originally relayed. *See* 28 C.F.R. §§ 20.34, 20.21(g). This procedure would fully address Reyes' main grievance without requiring separate actions against all the agencies.

of relief. At this point we cannot find an abuse of discretion by the district court.

*Affirmed in part, vacated in part, remanded for action consistent with this opinion.*