**UNITED STATES of America, Plaintiff,**

v.

**Shawn E. STEWART, Defendant.**

**No. 98–40097–01–SAC.**

United States District Court, D. Kansas.

May 7, 1999.

Randy M. Hendershot, Office of United States Attorney, Topeka, KS, for plaintiff.

Mark L. Bennett, Jr., Bennett & Dillon, L.L.P., Topeka, KS, Steven D. Rosel, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On October 14, 1998, the grand jury returned a twelve count indictment charging the defendant with six separate counts of committing robberies affecting interstate commerce (in violation of 18 U.S.C. § 1951 (Hobb's Act)), and six separate counts of using and carrying a firearm during and in relation to crimes of violence (in violation of 18 U.S.C. § 924(c)(1)). The crimes are alleged to have occurred in Topeka and Lawrence, Kansas. Since October 20, 1998, Steven Rosel, retained counsel, has represented Stewart.

On January 15, 1999, the court conducted a hearing to consider the parties' respective pretrial motions. On January 28, 1999, this court entered a thirty page memorandum and order which, *inter alia*, granted in part and denied in part the defendant's motion to suppress his post-arrest statements to law enforcement officers. *See United States v. Stewart*, 51 F.Supp.2d 1136 (D.Kan.1999). The case was set for trial to commence on February 9, 1999.

On February 2, 1999, the court conducted a hearing to consider the defendant's petition to enter a guilty plea. Stewart's counsel had negotiated a conditional plea agreement with the government which preserved his right to appeal this court's partial denial of his motion to suppress. In addition, in exchange for his guilty plea to Counts 1, 2, 3, 4, 5, 7, 9 and 11 (six Hobb's Act violations/two § 924(c) violations) the government agreed, *inter alia,* to dismiss Counts 6, 8, 10 and 12 of the indictment, counts charging § 924(c) violations.

Prior to accepting the defendant's pleas, the court engaged the defendant and his counsel in an *extensive* colloquy regarding the terms of the plea agreement, the maximum and minimum penalties the defendant faced by entering his pleas, and the defendant's understanding of the impact of the plea agreement. The court asked the defendant if he understood that his guilty pleas waived several of his constitutional rights. The defendant indicated that he understood those rights he relinquished by entering his pleas. In response to the court's question, the defendant indicated that he was satisfied with his counsel's performance and that his counsel had explained the plea agreement, the rights he was waiving, and the salient aspects of the plea agreement. The defendant understood the consequences of his pleas. After the government offered its factual proffer, the court asked the defendant if those facts proffered by the government were true, to which the defendant responded that they were true. The defendant stated that he understood the minimum and maximum penalties in this case and that no one had predicted what sentence he would receive. The defendant also indicated that his counsel had explained the United States Sentencing Guidelines. The court indicated that the defendant had the right to appeal and that the court intended to approve the portion of the plea agreement that permitted the defendant to appeal the partial denial of his motion to suppress. The defendant agreed that he understood. The defendant was also explained that parole has been abolished.

In sum, the defendant stated under oath that his decision to enter guilty pleas was his own, that his decision was not the product of coercion, that it was not induced by promises not otherwise contained in the plea agreement, and that he understood the consequences of his decision. The defendant also acknowledged that he would not be permitted to withdraw his pleas unless the court did not grant the government's motion to dismiss the remaining § 924(c) counts (Counts 6, 8, 10 and 12) as set forth in paragraph 4 of the plea agreement. Only after meticulously following the protocols established by Fed.R.Crim.P. 11, and only after being satisfied in its own mind that the defendant's decision to enter a guilty plea was the voluntary, knowing and intelligent product of the waiver of his rights, did the court accept the defendant's pleas.

By his pleas, the defendant faces a mandatory minimum sentence of 25 years on the two § 924(c) counts (5 years + 20 years = 25 years), plus additional time for the Hobb's Act violations.[1] However, by entering this plea agreement, the defendant avoids the possibility of facing four additional § 924(c) convictions. Had the defendant proceeded to trial and been convicted of all those § 924(c) counts, the court would have been compelled to impose a mandatory consecutive sentence of five years on the first § 924(c) conviction and a mandatory consecutive sentence of 20 years on each additional § 924(c) conviction, resulting in a possible mandatory minimum sentence of 105 years.

---

1. The original, first draft of the presentence investigation was disclosed to the parties on April 15, 1999. The presentence report calculates a criminal history category of III and a total offense level of 26 for the robberies. This results in a guideline range of 78 to 97 for the robberies. The § 924(c) convictions result in a 25 year sentence, or 300 months. Consequently, the original presentence report calculates the defendant's total guideline sentence range to be 378 to 397 months.

On March 23, 1999, the defendant, now represented by newly retained counsel,[2] Mark L. Bennett, Jr., filed a motion titled "Defendant's Motion to Vacate and Set Aside Plea and To Reopen Hearing on Defendant's Motion to Suppress His State-ment and to Allow him to Present Evi-dence for the Reason that He Has Been Denied his Sixth Amendment Right to Ef-fective Assistance of Counsel and His Fifth Amendment Right to Due Process and Equal Protection" (Dk.31).

Specifically, the defendant contends that Rosel was ineffective in the following ways: (1) ignoring Stewart's claims of fac-tual innocence; (2) ignoring factual incon-sistencies between the eye witness identifi-cations of the alleged perpetrator and Stewart's physical appearance; (3) failing to maintain proper communication with Stewart including failing to fully explain the plea agreement; (4) taking steps to have a block placed on his phone so that Stewart, who was housed at CCA, could not contact him by telephone to discuss the case; (5) failing to argue that Stewart's post-arrest statements were the product of coercion by law enforcement officers; (6) not calling either the defendant or the defendant's mother to the witness stand during the suppression hearing despite their requests to do so; (7) pressuring the defendant to accept the plea agreement although Stewart did not want to do so; (8) failing to provide adequate counsel re-garding the terms, conditions and effect of the plea agreement prior to the change of plea hearing; and (9) misinforming the defendant of the maximum penalty that he could potentially serve.

In a thorough response, the govern-ment adamantly opposes the defendant's motion to withdraw his pleas. First, the government suggests that almost all of the defendant's allegations of neglect and incompetence of Rosel are unfounded as demonstrated by the record and that "Mr. Bennett should have procured the tran-

script of the [suppression] hearing before making these allegations against another attorney." As to the defendant's new ar-guments, the government systematically addresses each issue. The government's memorandum concludes with a discussion of the factors suggested by the Tenth Cir-cuit for determining whether a defendant should be permitted to withdraw his plea. In short, the government contends that the defendant's stated reasons for with-drawing his pleas, including his post hac attack on the competence of his counsel, are inadequate to permit the withdrawal of his pleas at this juncture.

Beginning on April 14, 1999, and con-cluding on April 20, 1999, the court con-ducted a hearing to consider the defen-dant's motion to withdraw his pleas. The court also heard evidence pertaining to the defendant's motion to suppress. At the hearing, the defendant, the defendant's mother and the defendant's step-father testified regarding the quality of Rosel's representation. Each opined that Rosel's legal representation of Stewart was defi-cient in several respects. The defendant and his parents each testified that prior to the change of plea hearing, they did not understand that under the terms of the plea agreement the mandatory minimum sentence would be twenty-five years or that Stewart would face an additional peri-od of incarceration for the robberies. Each of these witnesses also testified that in their own opinion, Rosel had not zeal-ously represented Stewart and had failed to maintain adequate communication with Stewart. Each witness claimed that de-spite Stewart's request, Rosel did not call Stewart or his mother as witnesses at the motion to suppress hearing ostensibly be-cause he said he needed to be in another court later that afternoon.

Stewart testified that he did not see an actual copy of the entire plea agreement and the petition to enter a plea until the

---

**2.** On March 23, 1998, Bennett filed an entry of appearance in this case. Rosel, however, has not yet filed a motion to withdraw and so he still remains as counsel of record in this case.

morning before the change of plea hearing, and at that time he was only able to see it through the mesh-covered glass window that separated him from Rosel while in the interview room in the Marshal's office.

The government called Rosel as a witness.[3] Throughout his testimony Rosel described the legal services he has provided during his representation of Stewart in this case. Rosel explained that his primary concern in representing every criminal client is to minimize his or her potential exposure to the incarceration system. Although he had not gone over every single word of the plea agreement with Stewart prior to the change of plea hearing, Rosel was confident that Stewart understood the most significant provisions of the agreement, including the minimum sentence that he faced.

As to the defendant's challenge to his performance and the decisions he made during the motion to suppress hearing, Rosel testified that his decision to not call either the defendant or his mother as witnesses was a tactical one and had nothing to do with his need to appear in another court. Rosel testified that it was his belief that the winning legal argument on the motion to suppress concerned law enforcement officers' alleged failure to stop their interrogation when the defendant invoked his right to remain silent and his right to speak to an attorney. Rosel had no doubt that the defendant understood the plea agreement and that the defendant's pleas were voluntary.

### Voluntariness of Guilty Plea

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (*quoting North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)). A guilty plea entered upon the advice of counsel is invalid if the plea was coerced, *Osborn v. Shillinger,* 997 F.2d 1324, 1327 (10th Cir.1993), or if the advice of defendant's counsel was not within the range of competence demanded of attorneys in criminal cases, *Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. at 369; *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

*United States v. Carr,* 80 F.3d 413, 416 (10th Cir.1996).

### Withdrawal of Guilty Plea

■ "There is no absolute right to withdraw a guilty plea." *United States v. Rhodes,* 913 F.2d 839, 845 (10th Cir.1990). *See United States v. Vidakovich,* 911 F.2d 435, 439 (10th Cir.1990) ("[A] defendant does not have any absolute right to withdraw his plea of guilty even though the motion is made before sentencing."). Un-

**3.** Prior to Rosel taking the witness stand, Stewart essentially conceded that his challenge to the competence of Rosel's legal representation waived the attorney-client privilege. In *Tasby v. United States,* 504 F.2d 332 (8th Cir.1974), *cert. denied,* 419 U.S. 1125, 95 S.Ct. 811, 42 L.Ed.2d 826 (1975), the Eighth Circuit explained:

It has long been the law that a client may waive protection of the privilege, either expressly or impliedly. *Blackburn v. Crawfords,* 70 U.S. (3 Wall.) 175, 194, 18 L.Ed. 186 (1865). One of the circumstances which may support a conclusion of a waiver is an attack by the client upon his attorney's conduct which calls into question the substance of their communications. A client has a privilege to keep his conversa-

tions with his attorney confidential, but that privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence.... Surely a client is not free to make various allegations of misconduct and incompetence while the attorney's lips are sealed by invocation of the attorney-client privilege. Such an incongruous result would be inconsistent with the object and purpose of the attorney-client privilege and a patent perversion of the rule. When a client calls into public question the competence of his attorney, the privilege is waived.

*Id.* at 336.

der Fed.R.Crim.P. 32(e), the district court may permit a defendant to withdraw a plea of guilty before sentence is imposed "if the defendant shows any fair and just reason" for doing so.

## Burden of Proof

 "The defendant has the burden of establishing that there is a fair and just reason for allowing withdrawal of his plea." *United States v. Gould,* 78 F.3d 598 (10th Cir.1996) (Table; available at 1996 WL 108497) (*citing United States v. Gordon,* 4 F.3d 1567, 1572 (10th Cir.1993)). "Where the defendant meets his burden [of establishing that there is a fair and just reason for allowing the withdrawal of his plea], the government then has the opportunity to demonstrate prejudice." *Gould,* 1996 WL 108497 at *1 (*citing* Fed. R.Crim.P. 32(d) advisory committee's note to 1983 amendment.). *See* Fed.R.Crim.P. 32, Advisory Committee Notes, 1983 Amendment (adopting position taken by the Second Circuit in *United States v. Saft,* 558 F.2d 1073 (2nd Cir.1977) that "there is no occasion to inquire into the matter of prejudice unless the defendant first show a good reason for being allowed to withdraw his plea."). *See United States v. Hickok,* 907 F.2d 983, 986 (10th Cir.1990) ("Unless a defendant presents a 'fair and just reason' for the withdrawal, the court need not consider prejudice to the government.") (citation omitted).

The Advisory Committee, in adding the "fair and just reason" standard to Rule 32 in 1983, articulated this justification for imposing this burden on the defendant:

Given the great care with which pleas are taken under this revised Rule 11, there is no reason to view pleas so taken as merely 'tentative,' subject to withdrawal before sentence whenever the government cannot establish prejudice.

Were withdrawal automatic in every case where the defendant decided to after his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but a "grave and solemn act," which is "accepted only with care and discernment."

Fed.R.Crim.P. 32, Advisory Committee Notes, 1983 Amendment (*quoting United States v. Barker,* 514 F.2d 208, 221 (D.C.Cir.1975) (*quoting Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970))). In *United States v. Hyde,* 520 U.S. 670, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997), the Supreme Court articulated a similar justification for allocating the defendant the burden of demonstrating a "fair and just" reason for withdrawing his plea:

After the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea, [a defendant cannot] withdraw his guilty plea simply on a lark.

*Id.* at 676, 117 S.Ct. 1630.

## Standard of Review

 The district court's denial of a motion to withdraw a guilty plea is reviewed for an abuse of discretion. *United States v. Jones,* 168 F.3d 1217, 1219 (10th Cir. 1999) (*citing United States v. Carr,* 80 F.3d 413, 419 (10th Cir.1996)).

Although it is within the sound discretion of the district court to determine what circumstances justify granting a motion to withdraw a guilty plea, such motions should be "freely allowed, viewed with favor, treated with liberality, and given a great deal of latitude." *Id.* We will not reverse the district court unless Defendant can demonstrate that the district court abused its discretion by acting unjustly or unfairly. *Id.*

*Jones,* 168 F.3d at 1219.

## Factors for Determining Whether to Permit Withdrawal of Plea

 In determining whether a defendant has carried his burden of demonstrat-

ing a fair and just reason for allowing withdrawal of his guilty plea, the court should consider the following factors:

(1) whether the defendant has asserted his innocence;

(2) prejudice to the government;

(3) delay in filing defendant's motion;

(4) inconvenience to the court;

(5) defendant's assistance of counsel;

(6) whether the plea was knowing and voluntary; and

(7) waste of judicial resources.

*Id.* (*citing United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir.1993)).

In addition to the seven factors routinely listed by the Tenth Circuit, in *United States v. Glover*, 911 F.2d 419 (10th Cir. 1990), the Tenth Circuit suggested one additional factor for the court to consider in determining whether the defendant has demonstrated a fair and just reason for withdrawing his plea: the likelihood of conviction. In *Glover*, the Tenth Circuit stated: "In the face of [defendant's] admitted and palpable guilt, permitting the defendant to withdraw his plea would only result in a postponement of the inevitable." *Id.* at 421 (denying withdrawal of plea motion).

### Analysis

*(1) Assertion of innocence:*

■ In the brief prepared by his new counsel, the defendant claims that he is innocent and that he would not have pleaded guilty but for the errors and omissions of Rosel, his first counsel. When testifying during the hearing on his motion to withdraw his guilty plea, the defendant did not ever affirmatively state that he was innocent of any of the crimes to which he entered a plea of guilty. However, the defendant did testify that his confession was not voluntary and was the product of repeated prompting by the interrogating officers who told him what to say. Giving the defendant the benefit of the doubt, one could conclude that he apparently believes himself to be innocent of one or more of the crimes to which he entered a guilty plea.

Despite the defendant's sworn statements at the time of the plea in which he agreed with the government's factual proffer that he had in fact committed the crimes to which he was pleading guilty, and despite his voluntary post-arrest confessions to law enforcement officers implicating him in the same crimes (and ignoring the physical evidence tying the defendant to one or more of the crimes), and despite the defendant's highly detailed factual account of the crimes provided to the presentence investigation writer, the defendant ostensibly claims that he is innocent of the crimes charged. In *Carr*, 80 F.3d at 420, the Tenth Circuit essentially stated that this factor only requires the defendant seeking to withdraw his plea to assert his innocence. Although there is serious reason to doubt the defendant's claim of innocence, this factor weighs in Stewart's favor.

*(2) Prejudice to the government:*

"Some degree of prejudice to the government is, of course, inevitable from a plea withdrawal." *Carr*, 80 F.3d at 420. Assessing the type, manner and degree of prejudice are necessary to evaluate this factor. *See id.*

In this case, the government contends that it will be prejudiced if the defendant is permitted to withdraw his guilty plea. The government indicates that the numerous witnesses it needed to call to prove all six robberies have already been called off, having been told the defendant entered a guilty plea and that the only matter that remained was the issue of sentencing. The government contends that its witnesses and investigators have "gone on about their lives, and to allow the defendant to willy-nilly withdraw his plea will surely cause those many victims and witnesses to doubt the moral and ethical underpinnings of this system of justice."

During the pretrial status conference, the government indicated that it might list as many as 47 persons as potential witnesses, although it would probably only

have to call about 20 of those persons as witnesses at trial. The defendant indicated that he might call 5 or 6 witnesses. The parties agreed that this case would take approximately one week to try.

Given the complexity of this case and the number of witnesses necessary to prove its case, permitting the defendant to withdraw his pleas will cause prejudice to the government. This factor weighs against Stewart.

*(3) Delay in filing defendant's motion:*

"The amount of time which has passed between the plea and the motion must also be taken into account" in determining whether the defendant has demonstrated a fair and just reason for withdrawing his plea. Fed.R.Crim.P. 32, Advisory Committee Notes, 1983 Amendment.

> A swift change of heart is itself strong indication that the plea was entered in haste and confusion ***. By contrast, if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force.

*Id.* (*quoting Barker,* 514 F.2d 208). "[E]xtended delays weigh against granting a withdrawal motion because they often result in substantial prejudice to the government and may suggest manipulation by the defendant." *Carr,* 80 F.3d at 420.

> [I]f the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerab[le] ... force. The movant's reasons must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially prejudiced the Government's ability to prosecute the case.

*Carr,* 80 F.3d at 420 (*quoting United States v. Vidakovich,* 911 F.2d 435, 439–40 (10th Cir.1990), (delay of five months), *cert. denied,* 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1055 (1991)).

**Analysis**

Stewart entered his guilty pleas on February 2, 1999. Stewart did not file his motion to withdraw his pleas until March 23, 1999—over seven weeks after the date he entered his pleas. Courts have deemed similar delays unreasonable. *Compare United States v. Burk,* 36 F.3d 1106, 1994 WL 526709 (10th Cir.1994) (Table) (defendant's change of heart after six week delay, prompted by his belated assessment that he would receive a harsher sentence, unreasonable); *United States v. Lamb,* 100 F.3d 957, 1996 WL 662898 (6th Cir.1996) (Table) ("This court has held that a five-week delay [that precedes a defendant's motion to withdraw his plea] was excessive and warranted the denial of a defendant's motion, and we continue to follow this precedent with our decision today."); *United States v. Spencer,* 836 F.2d 236, 239 (6th Cir.1987) ("We find that the motion [to withdraw the defendant's guilty plea] was not promptly filed. The defendant waited twenty-two days before filing his motion for withdrawal of his guilty plea—only three days before sentencing. The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.") *with Jones,* 168 F.3d at 1219–20 (motion to withdraw guilty plea filed ten days after Rule 11 hearing deemed timely).

The defendant contends that he has not delayed in filing his motion. First, the defendant argues that prior to hiring Mr. Bennett he had continued to labor under the misinformation and deficient performance of Rosel, his first attorney. Second, the defendant contends that he and his family made arrangements to hire new counsel as quickly as possible and that his new attorney acted as expeditiously as he

possibly could have under the circumstances.

While the court agrees that Mr. Bennett, once retained by the defendant, worked diligently and proficiently at filing a motion seeking permission for Stewart to withdraw his pleas, the same cannot be said for the expediency of the defendant's own decision to withdraw his pleas. If the defendant truly did not understand the consequences of his pleas prior to the change of plea hearing, any misapprehension that he or his family labored under was resolved before the court accepted his guilty pleas. Nevertheless, the defendant pressed on toward the sentencing phase of this case for several weeks without providing any notice to the court or the government that he was having second thoughts about the wisdom of pleading guilty. During that time frame, the defendant even cooperated with the presentence investigation. This factor weighs against Stewart.

*(4) Inconvenience to the court:*

"As with the prejudice [to the government factor], some degree of inconvenience is inevitable." *Carr,* 80 F.3d at 420. If the defendant is permitted to withdraw his plea, rescheduling a week long trial into the court's busy criminal docket will obviously inconvenience the court and cause delays in other pending cases. This factor weighs against Stewart. *See id.* at 420–21.

*(5) Assistance of counsel:*

As set forth above, Stewart makes a myriad of attacks on the quality of the legal representation provided by Rosel. The court will address each area of concern raised by the defendant.

**Legal Standards**

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-pronged test for evaluating claims of ineffective assistance of counsel. In *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Court held that the *Strickland* test also applies to challenges to guilty pleas based on ineffective

assistance of counsel, as in the instant case. *Id.* at 58, 106 S.Ct. at 370. To prevail under Strickland, an appellant must show both (1) that counsel's performance was deficient and (2) that this deficiency prejudiced appellant's defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Gillette v. Tansy,* 17 F.3d 308, 310 (10th Cir.1994). An appellant can establish the first prong of the *Strickland* test by showing that the attorney's conduct did not fall within the wide range of competence demanded of attorneys in criminal cases. *Gillette,* 17 F.3d at 310. *See Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. at 369. A court's review of the attorney's performance must be highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

> [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* (*quoting Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). The second, or "prejudice," requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *See Hill v. Lockhart,* 474 U.S. at 59, 106 S.Ct. at 370–71.

*Carr,* 80 F.3d at 417. *See United States v. Kramer,* 168 F.3d 1196, 1200–01 (10th Cir. 1999).

"[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland v. Washington,* 466 U.S. at 697, 104 S.Ct. 2052.

**Defendant's Allegations of Ineffective Assistance of Counsel**

At the outset, the court notes that Steve Rosel is an experienced member of the Kansas bar who regularly practices in

federal court. Although retained by Stewart in this case, Rosel is one of the all too few attorneys on the CJA appointment list in Topeka. Rosel regularly accepts appointments to represent indigent criminal defendants in federal court and has represented his clients in this court in a professional manner. *See Gillette v. Tansy,* 17 F.3d 308, 311 (10th Cir.1994) (noting relevance of counsel's experience in determining effectiveness of counsel's assistance). It also deserves mention that Rosel successfully negotiated a conditional plea agreement with the government that enables the defendant to challenge the partial denial of his motion to suppress. The plea agreement negotiated by Rosel also shaved a possible mandatory eighty year term of imprisonment off the defendant's potential sentence.

**(1) Ignoring Stewart's claims of factual innocence.**

The court is not persuaded that Stewart actually claimed factual innocence during his pre-plea communications with Rosel. Even if Stewart claimed factual innocence during his discussions with his attorney, Rosel could have reasonably concluded that his client's protestations of factual innocence were completely inconsistent with much of the objective evidence in this case and were primarily the product of either Stewart's poor skills as a historian or his inability to come to grips with the consequences of his criminal acts. Moreover, during his guilty pleas the defendant, under oath, admitted that he actually committed the crimes to which he had previously confessed.

**(2) Ignoring factual inconsistencies between the eye witness identifications of the alleged perpetrator and Stewart's physical appearance.**

As just discussed, Rosel's evaluation of the evidence against his client and how a jury would likely view it was not unreasonable. As to the defendant's implicit suggestion that Rosel did not properly investigate other alternatives in preparing his defense, it is true that "trial counsel who fails to interview potential witnesses or follow up on substantial leads may be deficient." *United States v. Mealy,* 851 F.2d 890, 909 (7th Cir.1988). In this regard, the Supreme Court has explained,

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984).

Rosel's pre-plea investigation of the evidence relevant to this case was not constitutionally deficient. Although the defendant points to inconsistencies between some of the eye witness descriptions of the alleged robber and his own appearance, those inconsistencies would not have been likely to have caused a reasonable doubt in the juror's minds, particularly in light of the physical evidence tying Stewart to the crimes and the incriminating nature of his detailed confession to the crimes.

**(3) Failing to maintain proper communication with Stewart including failing to fully explain the plea agreement.**

Defense counsel's most important duties obviously include the obligation to keep his client informed about the case, to explain the pros and cons of going to trial, and to explain the pros and cons of entering a plea agreement with the government. Nothing convinces the court that Rosel did not fulfill these duties in a constitutionally sufficient manner. Although the court agrees with the defendant that it would have been more provident for Rosel to have provided Stewart with a copy of the full plea agreement and gone over the whole document in more exacting detail prior to the morning before the change of plea hearing, the court does not believe

that Rosel's performance was constitutionally deficient. In all of his pre-plea discussions with the defendant, Rosel repeatedly explained the benefits of the plea agreement, the mandatory minimum sentence and the total range of sentence that Stewart would likely face. The written plea agreement embodied those same terms which Stewart already knew and to which he had assented.

That Stewart understood the consequences of his potential plea is demonstrated by his own role in the pre-plea negotiations with the government. The first draft of the plea agreement contemplated that the defendant would attempt to provide substantial assistance to the government, *i.e.*, testify against other persons who participated in the robberies. Stewart apparently agreed in general with the terms of the first draft of the plea agreement. However, after reviewing the plea agreement, Stewart was concerned that if he prevailed before the Tenth Circuit on his appeal of this court's denial of his motion to suppress, his victory would be hollow as the government could use his post-plea testimony incriminating himself and others to prove its case against him. Consequently, at Stewart's insistence, the plea agreement was modified to insure that the government could not use any of Stewart's post-plea testimony against him (except to impeach Stewart if he committed perjury) if the Tenth Circuit reversed this court's denial of his motion to suppress.

**(4) Taking steps to have a block placed on his phone so that Stewart, who was housed at CCA Leavenworth, could not contact him by telephone to discuss the case.**

During his testimony, Rosel explained that he had in fact placed a block on calls from another client housed at CCA who would not stop calling him. Unfortunately, the telephone block Rosel had chosen inadvertently precluded anyone at CCA, including Stewart, from placing a call to him. Upon learning of this fact, Rosel quickly corrected the situation. Thereafter, Stewart was able to place calls from CCA to Rosel. The court is not convinced that the defendant was prejudiced in any appreciable way by these facts.

**(5) Failing to argue that Stewart's post-arrest statements were the product of coercion by law enforcement officers; (6) Not calling either the defendant or the defendant's mother to the witness stand during the suppression hearing despite their requests to do so.**

The defendant's contention that Rosel did not argue that his post-arrest statements were the product of coercion is absolutely incorrect. In support of the defendant's motion to suppress, Rosel presented the argument that Stewart was cajoled into confessing to crimes that he did not commit by the repeated prodding of law enforcement officers. Rosel also argued that law enforcement officers had attempted to use Stewart's mother's illness as a weapon to obtain his confession. In fact, the court's memorandum and order denying the defendant's motion to suppress expressly rejects the defendant's argument that his statements were the product of government coercion.

That Rosel chose to focus his legal challenge to the admissibility of Stewart's post-arrest statement on the issues of whether law enforcement officers had honored Stewart's invocation of his right to remain silent and/or right to speak to an attorney was not constitutionally deficient decision. Winnowing weaker arguments and instead focusing on the most critical issues is of course a reasonable and accepted tactic. *Cf. Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (*quoting Jones v. Barnes*, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 3312–3313, 77 L.Ed.2d 987 (1983)). The court accepts

Rosel's. testimony that his decision to not call either Stewart or his mother was a tactical one, not motivated by his need to appear in another court.

Rosel's decision not to press the coercion issue is intertwined with his decision to not call Stewart[4] or Stewart's mother as witnesses. "Whether to call a particular witness is a tactical decision and thus a matter of discretion for trial counsel." *United States v. Janoe*, 720 F.2d 1156, 1162 (10th Cir.1983) (*citing United States v. Miller*, 643 F.2d 713, 714 (10th Cir. 1981)). "While the decision whether to call a witness is a tactical one left to trial counsel's discretion, it is error not to call a witness who would present the only defense available." *Rocha v. Price*, 51 F.3d 286, 1995 WL 143116 (10th Cir.1995) (Table) (*citing United States v. Miller*, 643 F.2d 713, 714 (10th Cir.1981)).

In *Waters v. Thomas*, 46 F.3d 1506 (11th Cir.1995), the Eleventh Circuit made these pertinent observations about counsel's decisions regarding which witnesses, if· any, to call:

> Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess. *See Solomon v. Kemp*, 735 F.2d 395, 404 (11th Cir.1984) ("While attorneys may disagree as to how many or what particular witnesses to call, such is the stuff out of which trials are made."), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 952 (1985).

*Id.* at 1512. Later in that same opinion, the court of appeals commented:

> That other witnesses could have been called or other testimony elicited usually proves at most the wholly unremarkable fact that with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction counsel will inevitably identify shortcomings in the performance of prior counsel. As we have noted before, "[i]n retrospect, one may always identify

---

4. "The Supreme Court has recognized that the Constitution protects a defendant's right to testify on his own behalf at a criminal trial as 'essential to due process of law in a fair adversary process.' " *United States v. Ruiz–Castro*, 92 F.3d 1519, 1529 (10th Cir.1996) (*quoting Rock v. Arkansas*, 483 U.S. 44, 51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)) (additional quotation omitted). Although it is absolutely clear that the, defendant, not counsel, makes the decision whether or not to testify at trial, see *United States v. Janoe*, 720 F.2d 1156, 1161 & n. 10 (10th Cir.1983), "it is not clear that this extends to pretrial hearings." *Narvaez v. United States*, No. 97 Civ. 8745, 1998 WL 255429 (S.D.N.Y. May 19, 1998). Stewart cites no case which suggests that it was his personal right to decide whether to testify at the motion to suppress hearing.

> In *Narvaez*, the court commented:
> While it is well-established that a defendant has a constitutional right, personal to him and not waivable by counsel, to testify at trial, it is not clear that this extends to pretrial hearings, particularly where, as in the Rule 32(e) context, the decision to hold a hearing at all is within the discretion of the trial judge. It seems likely to this Court that the decision to put the defendant on the stand in a pretrial evidentiary hearing has no special constitutional status beyond

the right to present evidence on one's own behalf and is thus committed, as are all decisions about which witnesses to call or not call, to trial counsel's professional judgment. *See, e.g., United States v. Messina*, 131 F.3d 36, 41 (2d Cir.1997). The distinction is important because if the defendant has a personal right to testify, the question under the performance prong of *Strickland* is whether counsel informed defendant of that right, whereas if there is no such personal right the question becomes the more difficult standard of whether the decision not to call the defendant was within the range of sound professional judgment. Given the disposition of this issue on the prejudice prong, the Court need not decide this issue.

*Id.* at *5 n. 6.Like the court in Narvaez, this court expresses no opinion on the issue of whether the defendant or his counsel controls the decision to testify at a pretrial hearing as this court permitted Stewart (and his mother) to testify on the issue of coercion and reconsidered his motion to suppress *de novo*. Consequently, whether or not Rosel refused to call Stewart as a witness at the pretrial motion to suppress hearing over Stewart's objection, Stewart suffered no prejudice as a result of Rosel's failure to call him (or his mother) as witness at the motion to suppress hearing.

shortcomings," *Cape v. Francis*, 741 F.2d 1287, 1302 (11th Cir.1984), *cert. denied,* 474 U.S. 911,. 106 S.Ct. 281, 88 L.Ed.2d 245 (1985), but perfection is not the standard of effective assistance.

The widespread use of the tactic of attacking trial counsel by showing what "might have been" proves that nothing is clearer than hindsight—except perhaps the rule that we will not judge trial counsel's performance through hindsight. *See, e.g., Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."); *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir.1992) ("Most important, we must avoid second-guessing counsel's performance. As is often said, 'Nothing is so easy as to be wise after the event.'" (Citation omitted.)); *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir.1992) ("Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight."); *Thompson v. Wainwright*, 784 F.2d 1103, 1106 (11th Cir.1986) ("Hindsight, however, is not the appropriate perspective for a court to examine counsel's effectiveness."). We reiterate: "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." *Foster v. Dugger*, 823 F.2d 402, 406 (11th Cir.1987), *cert. denied*, 487 U.S. 1241, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1988), *quoted in Atkins v. Singletary*, 965 F.2d at 960.

*Id.* at 1514. *See United States. v. Prows*, 118 F.3d 686, 693 (10th Cir.1997) (given overwhelming evidence from other witnesses, including defendant himself, establishing defendant's guilt, failure to call witness was not prejudicial); *Nickel v. Hannigan*, 97 F.3d 403, 408–09 (10th Cir. 1996) (attorney's failure to suppress testimony of one witness not prejudicial under Strickland where other witnesses' testimony was sufficient to establish government's case), *cert. denied,* 520 U.S. 1106, 117 S.Ct. 1112, 137 L.Ed.2d 313 (1997); *United States v. Haddock*, 12 F.3d 950, 956–57 (10th Cir.1993) (failure to investigate rebuttal testimony not prejudicial under *Strickland* where conviction was supported by testimony from other witnesses).

Calling Stewart to the stand to testify about the voluntariness of his post-arrest confession was a course fraught with danger. Rosel testified that he personally did not believe that law enforcement officers "coerced" Stewart to confess. Given the court's opportunity to view Stewart on the witness stand, the court believes that most experienced counsel would be chary of subjecting him to the rigors of cross-examination. Moreover, by taking the witness stand to challenge the veracity of the statements of the law enforcement officers, the defendant exposed himself to the possibility of increasing his. sentence by receiving an enhancement for obstruction of justice and simultaneously losing the chance of earning a three point reduction for acceptance of responsibility. *See, e.g., United States v. Burch*, 153 F.3d 1140, 1144 (10th Cir.1998) (affirming enhancement under U.S.S.G. § 3C1.1 for obstruction of justice based defendant's perjured trial testimony); *see United States v. Wilson*, 162 F.3d 1175, 1998 WL 717289, *1 (10th Cir.1998) (Table) ("Ordinarily, a defendant who has been assessed an upward adjustment for obstruction of justice may not simultaneously receive a downward adjustment for acceptance of responsibility.") (*citing U.S.S.G.* § 3E1.1 cmt. n. 4.).

Stewart's mother's testimony concerned her own interactions with law enforcement officers conducting the investigation of the robberies. She was not present during the actual interrogation of Stewart. Stewart's mother's testimony, while relevant to the issue of coercion, does not convince the court that the law enforcement officers coerced Stewart into making a confession. Advising the defendant to not take the

stand and choosing not to call the defendant's mother to testify at the motion to suppress hearing were both imminently reasonable defense strategies.

Finally, in light of this court's decision to permit the defendant and his mother to testify on the issue of coercion and to reconsider *de novo* the defendant's motion to suppress his post-arrest statements, the defendant suffered no prejudice from Rosel's failure to call him or his mother as witnesses at the motion to suppress hearing.

**(7) Pressuring the defendant to accept the plea agreement although Stewart did not want to do so:**

During the guilty plea colloquy, the defendant specifically stated that his plea was not the product of pressure from anyone else and that he was satisfied with services of his attorney. That Rosel told the defendant that he should take the deal—even in an emphatic way—would not render Stewart's guilty plea involuntary. *See Carr,* 80 F.3d at 417 (defense counsel who told defendant who initially did not want to accept the plea agreement that he was "stupid" and "a fucking idiot" did not vitiate the voluntariness of the defendant's plea; decision to enter plea was still defendant's to make). Given the weight of the evidence against Stewart, it is "perfectly appropriate for [defense counsel] to inform his client about the great likelihood of conviction." *Carr,* 80 F.3d at 418. Moreover, if Stewart "was being coerced into pleading guilty, be should have so stated to the district court." *Jones,* 168 F.3d at 1220. "After freely and voluntarily pleading guilty, he cannot now complain that he did so under duress." *Id.*

**(8) Failing to provide adequate counsel regarding the terms, conditions and effect of the plea agreement prior to the change of plea hearing:**

The Tenth Circuit has held that a plea may be involuntary if the attorney " 'materially misinforms the defendant of the consequences of the plea,' " *United States v. Rhodes,* 913 F.2d 839, 843 (10th Cir.1990), *cert. denied,* 498 U.S. 1122, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991) (*quoting Laycock v. State of New Mexico,* 880 F.2d 1184, 1186 (10th Cir.1989)) .... In order to demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Laycock v. State of New Mexico,* 880 F.2d 1184, 1187 (10th Cir.1989).

*Carr,* 80 F.3d at 418.

The court is satisfied that Rosel explained all of the salient aspects of the plea agreement to the defendant prior to the change of plea hearing, including the mandatory minimum sentence and total range of sentence he likely faced.

■ "Although constitutionally deficient performance by defense counsel may render a plea involuntary, '[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance.' " *United States v. Williams,* 118 F.3d 717, 718 (10th Cir.) (*quoting United States v. Gordon,* 4 F.3d 1567, 1570 (10th Cir.1993)), *cert. denied,* —— U.S. ——, 118 S.Ct. 636, 139 L.Ed.2d 615 (1997); *United States v. Williams,* 948 F.Supp. 956, 963 (D.Kan. 1996) ("An attorney's failure to estimate with certainty the length of the defendant's sentence does not rise to the level of ineffective assistance of counsel."), *aff'd,* 118 F.3d 717 (10th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 636, 139 L.Ed.2d 615 (1997). In this case, Rosel accurately informed the defendant that the mandatory minimum sentence that he faced on the § 924(c) convictions was twenty-five years. Contrary to the defendant's suggestion, Rosel also accurately predicted the approximate sentencing guideline range that the defendant would face on the robbery charges.

Prior to accepting the defendant's plea, the court conducted a lengthy and thor-

ough colloquy with the defendant and his counsel. Despite the defendant's testimony that he was upset and did not understand anything that transpired during the change of plea hearing, the court is not satisfied that the defendant has demonstrated that he would not have pleaded guilty and would have insisted on going to trial.

**(9) misinforming the defendant of the maximum penalty that he could potentially serve.**

Any allegation that the defendant was misinformed about the maximum penalty he faced by pleading guilty was completely resolved by the court and his counsel prior to receiving the defendant's pleas. Prior to accepting the defendant's pleas, the court, in exacting detail, explained both the mandatory minimum and maximum penalties this defendant faced by entering his pleas. Both the defendant and his counsel agreed with the court's mathematical calculations and the defendant acknowledged that he understood that his plea exposed him to that liability. It is also worth noting that the mathematically highest possible sentence that the defendant could receive for the six robberies (imposing the maximum penalty on each robbery conviction and running each sentence consecutively) is not possible absent a dramatic upward departure from the sentencing guidelines.

In sum, the court finds that Rosel's representation of Stewart was not constitutionally deficient. This factor weighs against Stewart.

*(6) Voluntariness of the plea:*

■ "One fair and just reason justifying withdrawal of a guilty plea is that it was not made voluntarily." *United States v. Leung,* 783 F.Supp. 357, 359 (N.D.Ill.1991) (*citing U.S. v. Ellison,* 835 F.2d 687, 692–93 (7th Cir.1987), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987)). "The existence of a fundamental misunderstanding of the requirements and operation of the plea agreement is a fair and just reason for permitting [a] defendant to

withdraw his plea." *United States v. Ailsworth,* 927 F.Supp. 1438, 1451 (D.Kan. 1996). *See United States v. Pressley,* 602 F.2d 709, 711 (5th Cir.1979) ("If [the defendant] was mistaken as to the terms of the plea bargain, his original plea must be deemed less than a fully knowledgeable waiver of his rights.").

Based upon the colloquy between the court and the defendant prior to the court's acceptance of his guilty pleas, it is virtually impossible for the court to imagine that Stewart's pleas were anything but the product of a voluntary, knowing and intelligent waiver of his constitutional rights. *See Williams,* 118 F.3d at 718 ("Moreover, as set forth in the district court's order denying § 2255 relief, Mr. Williams' contention that he did not understand the possible penalties associated with his plea is belied by his discourse with the court at his plea hearing and the plea agreement itself."). Having reconsidered the issue in light of Stewart's testimony that he "didn't understand anything" during the change of plea hearing, the court still concludes that the defendant's guilty plea was voluntary. The defendant's post-plea remorse does not render his plea involuntary. *See Jones,* 168 F.3d at 1220 n. 1 ("The notion that a defendant may withdraw his guilty plea because he later feels that he made a poor decision has been flatly rejected by numerous courts."). This factor weighs against Stewart.

*(7) Waste of judicial resources:*

"[S]ome waste of judicial resources from a plea withdrawal is inevitable." *Carr,* 80 F.3d at 421. Although the waste attributable to permitting Stewart to withdraw his plea would not be colossal, this factor nevertheless weighs against Stewart. As mentioned above, the original presentence report has already been prepared and disclosed to the parties. This factor weighs against Stewart.

*(8) Likelihood of Conviction*

Viewing the direct and circumstantial evidence against the defendant, including

the defendant's detailed confession, it seems extremely unlikely that the defendant would not be found guilty of the crimes charged. This factor weighs against Stewart.

## Summary

In sum, having considered the evidence presented, and having considered the credible evidence in light of the factors established by the Tenth Circuit for determining whether the defendant has demonstrated a fair and just reason for withdrawing his plea, the court concludes that Stewart has failed to carry his burden. The court finds that Stewart's guilty plea was the product of his knowing, intelligent and voluntary waiver of his right to trial. In making this finding, the court concludes that Rosel's performance was not constitutionally deficient.

## Motion to Reconsider Denial of Motion to Suppress

Reconsidering the defendant's motion to suppress *de novo*, the court concludes the defendant's post-arrest statements were the product of a knowing and intelligent waiver of his right to remain silent and his right to speak to an attorney. Nothing presented by the defendant convinces the court that his post-arrest statements were the product of government coercion. Rejecting Stewart's testimony, the court further finds that no law enforcement officer continued to interrogate Stewart after he invoked his right to counsel unless the defendant himself initiated further conversation with law enforcement officers.

Although the court agrees that Stewart's mother's illness was an upsetting event for the defendant, the court rejects the defendant's claim that law enforcement officers used that fact to extract a coerced confession from him. The defendant's account of the events surrounding his confession strike the court as a post hac excuse concocted by the defendant's post-plea imagination. Officer Carlson, another witness called by the defendant, simply repeated what the defendant told him occurred during the interrogation by other law enforcement officers

In short, the court finds the law enforcement officers' accounts of their interviews of Stewart to be more credible. The defendant's motion to suppress, considered anew, is denied.

## Time for Filing Objecitons to the Original PSI

At the time the court accepted the defendant's change of plea, the court set a time for filing objections to the original PSI, the amended PSI and the day of sentencing. Because the defendant sought to withdraw his pleas, the court entered an order continuing the sentencing date. In light of its decision to deny the defendant's motion to withdraw his pleas, the court sets a new sentencing date of July 30, 1999, at 1:30 p.m. The court also sets the following dates relevant to sentencing.

Written Objections by Either Party to Original PSI due to the Probation Department: July 9, 1999

Final PSI provided to the parties and to the court: July 21, 1999

Memorandum Pertaining to Sentencing Factors and Facts which have not been resolved in the Final Presentence Report (Filed with the Clerk's Office/Copies to the Probation Department, Opposing Party and the Court's Chambers): July 23, 1999

IT IS THEREFORE ORDERED that the "Defendant's Motion to Vacate and Set Aside Plea and To Reopen Hearing on Defendant's Motion to Suppress His Statement and to Allow him to Present Evidence for the Reason that He Has Been Denied his Sixth Amendment Right to Effective Assistance of Counsel and His Fifth Amendment Right to Due Process and Equal Protection" (Dk.31) is denied in part and granted in part. The defendant's motion to vacate and set aside his guilty pleas is denied. The defendant was permitted to present additional evidence relevant to his motion to suppress, and to that extent his motion is granted. The defendant's motion to suppress (Dk.15), reconsidered *de novo,* is denied.

IT IS FURTHER ORDERED that sentencing in this case is set for July 30, 1999, at 1:30 p.m., at the U.S. Courthouse, 444 S.E. Quincy, Room 404, Topeka, Kansas.

IT IS FURTHER ORDERED that the date for filing objections to the PSI, the date for distribution of the final PSI, and the date to file a sentencing memorandum are modified as set forth in the body of this opinion.