**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 2 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

SHAWN E. STEWART,

      Defendant-Appellant.

No. 99-3159 and No. 99-3270
(D.C. No. 98-40097-01-SAC)
(Kansas)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, Circuit Judge, **HENRY**, Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

On October 14, 1998, Shawn E. Stewart ("Stewart") was charged in six counts of a 12-count indictment filed in the United States District Court for the District of Kansas with violations of the Hobbs Act, in violation of 18 U.S.C. § 1951 and in six additional counts he was charged with carrying and using a firearm during the Hobbs Act violations, in violation of 18 U.S.C. § 924(c)(1). On December 8, 1998, Stewart's retained counsel filed a motion to suppress certain statements made by Stewart to investigating officers.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

On January 15, 1999, hearing was held on Stewart's motion to suppress, and on January 28, 1999, the district court, in a detailed memorandum and order, denied the motion to suppress. *United States v. Stewart,* 51 F.Supp.2d 1136 (D.Kan. 1999). On February 2, 1999, Stewart, still represented by retained counsel, filed a petition with the district court to enter a plea of guilty pursuant to a plea agreement with the government. The petition itself was a detailed one. After hearing, the district court accepted Stewart's plea of guilty to eight counts of the 12-count indictment.

On March 23, 1999, Stewart, with new counsel, filed a motion to vacate and set aside his pleas of guilty and to reopen the hearing on his motion to suppress and allow him to present additional evidence. Hearing on that motion was held on April 14 and 20, 1999. On May 7, 1999, the district court denied that motion, in part, and granted it, in part. During the two hearings on this matter, the district court allowed Stewart's newly retained counsel to present additional evidence in connection with the motion to suppress, and, the motion, " reconsidered *de novo*," was then denied. At the same time, the district court denied Stewart's motion to vacate and set aside his pleas of guilty. *United States v. Stewart,* 51 F.Supp.2d 1147 (D. Kan. 1999). On May 19, 1999, Stewart filed his first notice of appeal. Our appeal No. 99-3159. On August 11, 1999, Stewart was sentenced and a second notice of appeal was filed on August 18, 1999. Our appeal No. 99-3270. By our order, the two appeals were consolidated. On appeal, Stewart argues that the district court erred in denying his motion to suppress and his motion to vacate and set

aside his pleas of guilty. Finding no reversible error, we affirm.

Stewart's pleas of guilty were entered pursuant to Fed. R. Crim. P. 11(a)(2), counsel reserving Stewart's right to seek appellate review of the district court's denial of his motion to suppress. Before considering the suppression matter, some background facts are in order. On September 4, 1998 there was an armed robbery of the Sonic drive-in in Topeka, Kansas. Shortly thereafter Stewart was arrested near his mother's residence in Topeka while hiding in some weeds and was taken to the Sonic where he was identified by witnesses who were in the restaurant at the time of the robbery. He was then taken to the Topeka Police Department headquarters where, at about 12:10 p.m., he was questioned by Detective Low of the Topeka Police Department. At that time Stewart declined to talk about the Sonic robbery. Miranda warnings had been given but that interview ended in a few minutes. Detective Low nonetheless returned in about twenty minutes and attempted to further question Stewart about the Sonic robbery. On this occasion Stewart made certain non-inculpatory statements and then again stated he did not want to talk about the Sonic robbery. Stewart was then taken to the Shawnee County jail.

While in the Shawnee County jail, a Detective Brown of the Lawrence Police Department interviewed Stewart on September 4, 1998, about 3:50 p.m., concerning a recent robbery of Shark's Surf Shop in Lawrence, Kansas. Detective Brown read Stewart his Miranda rights. Stewart, however, would not discuss the robbery of Shark's Surf

Shop. At about this point Stewart asked Detective Brown if he was there "to talk about a bank robbery" in Lawrence, which comment alerted Detective Brown. The interview ended when Stewart said "he was done talking." The following evening, September 5, 1998, at about 8:20, Detective Brown accompanied by F.B.I. Special Agent Phillip Andrews appeared at the Shawnee County jail to interview Stewart. While being escorted to an interview room from his cell by a jail attendant, Stewart told the attendant that he did not want to talk to anyone and wanted a lawyer. Upon seeing Detective Brown, Stewart told him that he did not want to talk and seemed "angry." Andrews then identified himself and showed Stewart his F.B.I. badge, whereupon Stewart began asking questions about the bank robbery in Lawrence, and Andrews, at the suppression hearing, testified that he told Stewart that he could not talk to him until he was "advised of his rights." Stewart was then advised of his Miranda rights and at that time Stewart signed a written waiver of his rights. During the ensuing interview, Stewart gave, *inter alia,* a detailed verbal confession to the robberies at Sonic, Shark's Surf Shop in Lawrence and Wendy's in Topeka. This interview ended about 2:00 a.m. September 6, 1998.

On September 6, 1998, at about 3:28 p.m., Detective Brown returned to the Shawnee County jail to further interview Stewart, who was again advised of his Miranda rights, which he waived and indicated he would speak about the several robberies in question. Stewart then gave the officers a written statement, in his own handwriting.

At the hearing on Stewart's motion to suppress, the government called five

witnesses, including two guards at the Shawnee County jail who had escorted Stewart to and from the interview room. Each testified that Stewart was adamantly adverse to do any talking. Other government witnesses were Detective Low of the Topeka Police Department, Detective Brown of the Lawrence Police Department and Phillip Andrews, Special Agent for the F.B.I. Their testimony paralleled the foregoing recitation of the background facts. There was testimony elicited from these witnesses relating to the fact that very shortly after Stewart's arrest, his mother was taken to a hospital on an emergency basis. At the conclusion of the government's presentation of evidence, counsel for Stewart announced that there would be no witnesses on behalf of Stewart. It was on this state of the record that the district court, after taking the matter under advisement, on January 28, 1999, denied the motion to suppress.

In denying the motion to suppress, the district court, in a very detailed memorandum and order, held, in essence, that though Stewart had initially indicated he didn't want to do any "talking" and perhaps, though it was uncertain, had indicated he wanted a lawyer appointed to represent him, Stewart later changed his mind, particularly after Special Agent Andrews began participating in the interviewing, and had voluntarily waived his right to remain silent, and, after signing a written waiver, made verbal confessions which the following day were reduced in Stewart's own handwritten confession. The district court did suppress whatever statements were made by Stewart in his second interview with Detective Low, which statements were in reality exculpatory,

though perhaps incriminating.  Otherwise, as indicated, the motion to suppress was denied.  The district court also found that "under the totality of the circumstances," Stewart's statements to Detective Brown and Special Agent Andrews were voluntary.

"We review *de novo* the question of whether a waiver of counsel is voluntary, knowing and intelligent." *United States v. Taylor,* 113 F.3d 1136, 1140 (10th Cir. 1997). However, though our standard of review of a district court's denial of a motion to suppress be *de novo,* a district court's findings on "subsidiary factual questions" are subject to review under a clearly erroneous standard.  In this regard, in *United States v. Glover,* 104 F.3d 1570 (10th Cir. 1997) we spoke as follows:

> When a defendant challenges the use of her statements on the ground that they were involuntary, it is the duty of this court "to examine the entire record and make an independent determination of the ultimate issue of voluntariness." *Davis v. North Carolina,* 384 U.S. 737, 741-42, 86 S.Ct. 1761, 1764, 16 L.Ed.2d, 895 (1996).   Nevertheless, the district court's rulings regarding "subsidiary factual questions, such as whether the police intimidated or threatened a suspect or whether a suspect was particularly susceptible to police coercion, are subject to review under the clearly erroneous standard." *United States v. Chalan,* 812 F.2d 1302, 1307-08 (10th Cir. 1987).

*Id.* at 1579.

In our view, the district court's resolution of  "subsidiary factual questions" is not clearly erroneous.  The district court gave this matter careful consideration.  The record would indicate that Stewart, though he initially was disinclined to "talk," eventually, after several Miranda warnings, decided to "talk" to Special Agent Andrews.  In this regard, he

signed several waivers of his Miranda rights and verbally "confessed" which confession he later wrote in his own handwriting. The district court did not err in denying Stewart's motion to suppress his statements to Detective Brown and Special Agent Andrews. In support of our resolution of this issue, *see Michigan v. Mosley,* 423 U.S. 96 (1975) and *United States v. Glover,* 104 F.3d 1570 (10th Cir. 1997).

At the hearing on Stewart's motion to vacate and set aside his pleas of guilty and to reopen the hearing on his motion to suppress, counsel called four witnesses: Carlson, a corrections specialist at the Shawnee County jail, David McCoy, Stewart's step-father, Patricia Ann Davis, Stewart's mother, and Stewart. At this hearing, emphasis was placed on the fact that in the early morning hours of September 5, 1999, Stewart's mother had been taken to a hospital on an emergency basis and in this connection Stewart testified that Brown and Andrews, in questioning him, had improperly advised him in one form or another, that if he "cooperated" they would let him communicate with his mother. Also, Stewart testified that he really didn't understand his plea agreement with the government, and particularly the sentence he would receive. In this regard, the record before us does not include the sentence imposed. It would appear that in fact Stewart was later sentenced to imprisonment for 378 months. *United States v. Stewart,* No. 98-40097-01-SAC, 1999 W.L. 706156 (D. Kan. Aug. 18, 1999).

At the hearing on the motion to vacate and reconsider, the government called two witnesses, Detective Brown and Steven Rosel, Stewart's initial attorney. Their testimony

contradicted the testimony previously given by Stewart concerning the hospitalization of his mother and his conversations with them. On this state of the record, the district court granted Stewart's request that his motion to suppress be reconsidered, whereupon the district court "reconsidered *de novo*" the motion to suppress and denied it. At the same time the district court denied Stewart's request to withdraw his pleas of guilty. The district court's memorandum and order consisted of some 40 pages and carefully considered all of the contentions raised by Stewart's newly retained counsel. In so doing, the district court necessarily assessed the credibility of the various witnesses, which, of course, was its prerogative. Courts of Appeal do not assess witness credibility. *United States v. McKissic,* 204 F.3d 1282, 1289 (10th Cir. 2000), *Manning v. United States,* 146 F.3d 808, 813 (10th Cir. 1998), Fed. R. Civ. P. 52(a).

Our standard of review of a district court order denying a motion to withdraw a plea of guilty is abuse of discretion. Our study of the record convinces us that in this regard the district court did not abuse its discretion. *United States v. Carr,* 80 F.3d 413, 419 (10th Cir. 1996), *United States v. Gordon,* 4 F.3d 1567, 1572 (10th Cir. 1993). The district court addressed all of the "factors" enumerated in *Carr* which should be considered in determining whether the defendant has met the burden of establishing that there is a fair and just reason for allowing him to withdraw his plea of guilty. In our view, a fair reading of the district court's lengthy order denying Stewart's motion to withdraw his pleas of guilty clearly indicates that the district court did not abuse its

discretion.

 Judgment affirmed.

         Entered for the Court,

         Robert H. McWilliams
         Senior Circuit Judge